IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **STATE OF GEORGIA** | **Case Number:** |
| **v.** | |
| **CATHLEEN A. LATHAM** *et seq.* | |
| **Defendants.** | |

## NOTICE OF REMOVAL OF STATE COURT ACTION
## TO FEDERAL COURT

Defendant Cathleen A. Latham requests that this Court remove a criminal prosecution against Defendant in the Superior Court of Fulton County, Atlanta Judicial Circuit, State of Georgia, *State of Georgia v. Donald John Trump et al.*, case number 23SC188947 (State action), to this Court pursuant to 28 U.S.C. § 1442, §1455 and the Supremacy Clause of the Constitution of the United States. The Office of the District Attorney for Fulton County has obtained an Indictment against the former President of the United States of America, the former White House Chief of Staff and 16 other individuals, including Defendants, presidential electors for the United States Electoral College for alleged conduct relating to "the United States presidential election held on November 3, 2020," as averred in the first sentence of the Indictment's introduction. *See* Exhibit "A", p. 14. Defendant possesses a right to remove the State action as an officer of the United States or a person acting under

1

officers of the United States, with federal defenses to the State charges requiring the construction of federal law, under Section 1442. The Court may also appropriately remove the State action on the ground that the State lacks jurisdiction to prosecute an elector for the U.S. Electoral College for conduct in relation to an election for President of the United States. Federal courts should intervene where partisan State prosecutors, out of political opportunism, retroactively allege conduct by United States presidential electors which is wholly within the bounds of the law and entirely consistent with the only known political precedent, to be allegedly criminal after the fact.

## I. **BACKGROUND TO NOTICE OF REMOVAL**

### B. **The Precedent of the 1960 Presidential Election in Hawaii Relating to Contingent Electors Where the Election Results Are Contested**

In the presidential elections of 1960 and 2000, judicial challenges to the elections were not finally adjudicated prior to the date on which the ECA[1] requires Presidential Electors to cast their votes. *See* Expert Declaration of Professor Todd Zywicki, attached as Exhibit B, ¶ 10. In the 1960 presidential election, Richard Nixon, the Republican candidate, was initially certified by the State of Hawaii as the

---

[1] The ECA was amended by Congress in 2022. References to the ECA herein are to the previous version of the ECA in place in 2020 at the time the events in the Indictment at issue took place.

winner of the vote. *Id.* at ¶ 11. Supporters of John F. Kennedy, the Democrat presidential candidate, filed a legal action contesting the election, alleging various voting irregularities. *Id.* The action was still pending on the date Hawaii's Presidential Electors were to meet. *Id.* As a result of the pending election contest, certified, contested, electors for Nixon and uncertified, contesting electors for Kennedy met separately at the Hawaii State capitol building on December 19, 1960, and cast their votes for their respective candidates. *Id.*

Kennedy prevailed in the contest to the election, and the election was re-certified in his favor. *See* Exhibit B, ¶ 12. The Governor of Hawaii sent a second Certificate of Ascertainment, reporting that as a result of the lawsuit, the electoral votes of Hawaii were to be recorded for Kennedy rather than Nixon. *Id.* Congress counted the votes of the uncertified, contingent electors for Kennedy. *Id.* The response of the political parties to the judicial contest of the election in Hawaii in 1960 was cited as precedent by advocates for Democratic presidential candidate Al Gore during the contested 2000 presidential election. *See* Exhibit B, ¶¶ 13, 14.

B. **The Georgia Republican Party's Response to the Contested Results of the 2020 Presidential Election in Georgia**

On March 4, 2020, eight months prior to the November 3, 2020, general election, the State Executive Committee of the Georgia Republican Party (Party) selected Mrs. Latham and fifteen other individuals as nominees for presidential elector (Presidential Elector) for the November 3, 2020, general election. The following day, March 5, 2020, the Party certified Mrs. Latham and the other nominees to the Georgia Secretary of State.

The general election was held on November 3, 2020. On November 20, 2020, the Secretary of State certified the election results. On the same date, Donald J. Trump, President of the United States, demanded a recount of the vote for president, pursuant to Georgia law.

On December 14, 2020, Mrs. Latham and the other contingent Republican Presidential Electors met at the Georgia State Capitol. The meeting was open to the media, who were present. A court reporter was present to transcribe the meeting.

Legal counsel told the audience that the contingent Presidential Electors were meeting and voting because the challenge to the election results in Georgia was still ongoing, and that the meeting and vote of the contingent Presidential Electors was in conformity with the Constitution and was similar to the procedure followed in Hawaii during the presidential election of 1960. The contingent Presidential Electors

then voted, pursuant to the U.S. Constitution and the Electoral Count Act of 1887 (ECA), 3 U.S.C. §§ 1 *et seq*.

**C. The Fulton County District Attorney's Investigation and Prosecution**

On January 20, 2022, the District Attorney for Fulton County/the Atlanta Judicial Circuit sent a letter to the Chief Judge of the Superior Court of Fulton County, requesting that a special purpose grand jury under Georgia law be impaneled for the purpose of investigating possible attempts to disrupt the administration of the 2020 elections in the State of Georgia. The Superior Court issued an order impaneling a special purpose grand jury to investigate potential disruptions to the administration of the 2020 elections.

The special purpose grand jury was impaneled on May 2, 2022. The District Attorney and her office caused the special purpose grand jury to investigate for nearly eight months, issuing subpoenas compelling the appearance of approximately 75 alleged witnesses, including a United States Senator, and compelling the production of other alleged evidence. The special purpose grand jury was dissolved on January 9, 2023.

On August 14, 2023, the District Attorney and her office filed an Indictment against former President Trump, former Chief of Staff Meadows, Mrs. Latham and others. The Indictment opens with a reference to the November 3, 2020, United

States presidential election. *See* Exhibit A, p. 14. The prosecution charges Mrs. Latham in relation to the meeting of the contingent Presidential Electors, the casting of their ballots and the certification of their votes. *Id.* at 40-42. It alleges purported unlawful conduct by Mrs. Latham in relation to the meeting of the contingent Presidential Electors, the casting of their ballots and the certification of their votes. *Id.* at 40-42. The prosecution charges as criminal in violation of State law alleged solicitation of the Vice President of the United States and officials of the United States Department of Justice, *id.* at 18, 45, 46, 50, 62, 63; and alleged strategies to disrupt and delay the joint session of the Congress of the United States on January 6, 2021, in Washington, D.C., *id.* at 17, 24, 38, 48, 49, 57, 58, 62, 63.

Mrs. Latham's Notice of Removal of State Criminal Action and for Writ of Habeas Corpus (Notice of Removal) is timely.

## II. <u>GROUNDS FOR REMOVAL</u>

### A. <u>The State Action Is Removable Based Upon the Fact that Mrs. Latham Was an Officer of the United States</u>

28 U.S.C. § 1442 states, in relevant part, that:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or

> relating to any act under color of such office or on account of
> any right, title or authority claimed under any Act of Congress
> for the apprehension or punishment of criminals or the
> collection of the revenue.

28 U.S.C. § 1442 (emphasis added). The purpose of the statute is to protect federal

officers from interference by hostile state courts, and to provide a federal forum

where the officers must raise defenses arising from their official duties, and where

they can receive a trial on the merits free from local interests or prejudice. *See Mesa*

*v. California*, 489 U.S. 121, 137 (1989) (quoting *Willingham v. Morgan*, 395 U.S.

402, 405 (1969)); *Arizona v. Manypenny*, 451 U.S. 232, 241-242 (1981) (citing

*Colorado v. Symes*, 286 U.S. 510, 517-518 (1932); *Maryland v. Soper*, 270 U.S. 9,

32 (1926)). The power to remove a State criminal case is as ample as the power to

remove a civil case. *See Mesa*, at 128 (quoting *Tennessee v. Davis*, 100 U.S. 257,

271 (1880)). Section 1442 is therefore construed liberally. *See Watson v. Philip*

*Morris Companies, Inc.*, 551 U.S. 142, 147 (2007) (quoting *Symes*, at 517; citing

*Manypenny*, at 242; *Willingham*, at 406–407). A party seeking removal under

Section 1442(a)(1) must (1) show that they are a person within the meaning of the

statute who acted under a federal officer; (2) show that they performed the actions

for which they are being sued under color of federal office, i.e., that there was a

causal connection between what the officer has done under asserted official authority

and the action against them; and (3) raise a colorable federal defense. *See Caver v.*

*Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (citing *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989)).

The role and duties of a Presidential Elector/elector for the United States Electoral College are described in the United States Constitution. *See* U.S. Const. Art. II § 1, cl. 3; Amend. XII. The United States Congress, through the ECA, has imposed other requirements upon Presidential Electors concerning when and where the Electors must meet and give their votes, and regarding the making, signing, and certification of the Electors' votes. *See* 3 U.S.C. §§ 7, 9, 10. As a contingent Presidential Elector, Mrs. Latham was an officer of the United States for the purposes of removal pursuant to Section 1442.

**B. The State Action Is Removable Based Upon the Fact that Mrs. Latham Was Acting Under Officers of the United States**

Even if Mrs. Ms. Latham is not found to be an officer of the United States, she must be held to be a person acting under officers of the United States for the purposes of Section 1442. The words "acting under" in the statute are broadly construed. *See Watson*, 551 U.S. at 147 (quoting *Symes*, 286 U.S. at 517; citing *Manypenny*, 451 U.S. at 242; *Willingham*, 395 U.S. at 406–407). The meaning includes attempting to assist or help carry out the duties or tasks of a federal superior. *Id.*, at 151-152. The Supreme Court of the United States has held that the statute

8

contemplates that "thousands" of persons, some with "little or no appearance of official authority," fall within the statute's scope. *See City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 820 (1966) (quoting *Baines v. City of Danville*, 357 F.2d 756, 760 (4th Cir. 1966)).

Presidential Electors "*exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States.*" *Burroughs v. United States*, 290 U.S. 534, 545 (1934) (emphasis added) (citing *In re Green*, 134 U.S. 377, 379 (1890)). The U.S. Constitution directs Presidential Electors to meet in their respective States, to vote by ballot, to make a list of all the persons voted for, to sign and certify the list, and to transmit the list sealed to Congress. *See* U.S. Const. Art. II § 1, cl. 3; Amend. XII. The President of the Senate/Vice President of the United States then, in the presence of a joint session of Congress, opens all the certificates from Presidential Electors, and the votes are counted. *Id.*; 3 U.S.C. § 15(a). After the votes of the Presidential Electors are counted, the result must be delivered to the President of the Senate, who must announce the state of the vote, which constitutes the declaration of the persons elected President and Vice President of the United States. *See* 3 U.S.C. § 15(e)(3).

In performing the duties of a Presidential Elector, the Mrs. Latham was acting to assist Congress in its count and announcement of the electoral votes for President

and Vice President of the United States. Mrs. Latham was furthermore acting to assist the President, and was following the advice of the President's legal counsel for the purpose of preserving the challenge to the election results. Construing Section 1442 broadly, Mrs. Latham was within the broad category of persons acting under officers of the United States for the purposes of removal.

Mrs. Latham also satisfies the other requirements for removal pursuant to Section 1442. Showing a causal connection between the actions of an officer under asserted official authority and the action against them requires only a connection or association between the act and the federal office. *See Caver*, 845 F.3d at 1144 (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015)). The hurdle imposed by the requirement "'is quite low...'" *Id.* (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). There is a clear connection or nexus between the conduct alleged in the Fulton County Indictment and the actions of officers of the United States, including Mrs. Latham, in carrying out their duties relating to the joint session of Congress on January 6, 2020. Mrs. Latham acted as a Presidential Elector, and in acting as a Presidential Elector, her conduct was plainly connected to, or associated with, the federal duties of numerous officers of the United States.

### 1. **Mrs. Latham Possesses Immunity Under the Supremacy Clause from the Charges in the State Court Action**

Regarding the third, and final, requirement for removal pursuant to 1442(a)(1), Mrs. Latham possesses several federal defenses to the State action. A colorable, federal defense under Section 1442 must only be plausible. *See Magnin*, 91 F.3d at 1427 (citing *Mesa*, 489 U.S. at 133; quoting *Willingham*, 395 U.S. at 406–407). The validity of the defense is not to be determined at the time of removal. *Id.*

Under the Supremacy Clause, Article VI, Clause 2 of the U.S. Constitution, a federal agent is immune from state prosecution if "(1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do." *Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988). In this case, Mrs. Latham was authorized by the Constitution and the ECA, and political precedent, to serve as a Presidential Elector and to take the actions which she took, for which she is indicted in the State action. Mrs. Latham furthermore did no more than was necessary to fulfill Mrs. Latham's federal obligations.

Mrs. Latham was acting pursuant to the guidelines of the Constitution, the ECA, and the precedent of the 1960 presidential election in Hawaii, at the direction of the President of the United States. This defense by itself is enough to support

removal under Section 1442. *See Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir. 1986) (finding that a defense that the defendant acted on orders from federal officers sufficient to warrant removal under Section 1442). Furthermore, Mrs. Latham believed that her actions were justified and lawful, based upon the Constitution, the ECA, the advice of legal counsel, and the precedent of the 1960 presidential election in Hawaii, and her belief was objectively reasonable. Mrs. Latham should be found to be immune from the charges in the Indictment in the State action, charging alleged unlawful conduct relating to the meeting of the Presidential Electors on December 14, 2020. *See Connecticut v. Marra*, 528 F. Supp. 381, 387 (D. Conn. 1981) (applying immunity to private citizen working as Federal Bureau of Investigation informant).

## 2. Mrs. Latham Possesses First Amendment and Due Process Defenses to the Charges in the State Court Action

Mrs. Latham also possesses the defense to the charges in the State action that the charges are unconstitutional and invalid as applied to defendants. All of the conduct by Mrs. Latham charged in the Indictment was protected by the right to freedom of speech, the right to freedom of assembly and the right to petition for redress of grievances under the First Amendment.

The right to due process under the Fifth Amendment requires that a criminal statute give fair warning of what the law intends to do if a certain line is passed. *See*

*United States v. Lanier*, 520 U.S. 259, 265 (1997) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)). The line should be clear. *Id.* "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope..." *Lanier*, at 266 (citing *Marks v. United States*, 430 U.S. 188, 191–192 (1977); *Rabe v. Washington*, 405 U.S. 313 (1972) (*per curiam*); *Bouie v. City of Columbia*, 378 U.S. 347, 353-354 (1964)). A statute may be held to be constitutionally invalid as applied when it operates to deprive an individual of a protected right. *See Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).

Mrs. Latham possessed no notice or fair warning that her following the precedent of the 1960 presidential election in Hawaii and her meeting and voting pursuant to the Constitution and the ECA would allegedly violate criminal law. Mrs. Latham's serving as a contingent Presidential Elector under the Constitution and the ECA could not have been criminal. The charges in the State action are unconstitutional and invalid as applied to Mrs. Latham. "[P]eaceable assembly for lawful discussion cannot be made a crime.' And 'those who assist in the conduct of such meetings cannot be branded as criminals on that score.'" *Thomas v. Collins*, 323 U.S. 516, 539–540 (1945) (quoting De *Jonge v. Oregon*, 299 U.S. 353 (1937)).

Mrs. Latham's defenses of immunity and defenses under the First Amendment and the Due Process Clause to the charges in the State action involve the construction of federal law, and are sufficient to support removal of the State action under Section 1442. The Court of Appeals has affirmed removals under the federal officer removal statute in cases where one of the defendants was an employee of a private aircraft engine manufacturer, who was also a "designated manufacturing inspection representative" of the Federal Aviation Administration (FAA), *see Magnin*, 91 F.3d at 1426, 1427, 1428; where the defendant was a State electrical cooperative, *see Caver*, 845 F.3d at 1144, 1145, 1146; where the defendant was an executive of a State health insurer and employees of a State health department, *see Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55, 56, 58 (5th Cir. 1975); and where the defendants were State banks, *see State of Tex. ex rel. Falkner v. Nat'l Bank of Com. of San Antonio, Tex.*, 290 F.2d 229, 231 (5th Cir. 1961). The Court should grant Mrs. Latham's Notice of Removal and remove the State action.

### 3. <u>Mrs. Latham Possesses Jurisdictional Defenses to the Charges in the State Court Action</u>

Mrs. Latham furthermore possesses the defense to the State action that the State of Georgia lacks jurisdiction to prosecute conduct in furtherance of the duties and responsibilities of a Presidential Elector and member of the U.S. Electoral College. "'The judgment of conviction pronounced by a court without jurisdiction

14

is void..."" *Custis v. United States*, 511 U.S. 485, 494 (1994) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)).

"Congress has the final authority over federal elections." *Oregon v. Mitchell*, 400 U.S. 112, 125 (1970). "[T]he States may regulate the incidents of... elections, including balloting, only within the exclusive delegation of power under the Elections Clause." *Cook v. Gralike*, 531 U.S. 510, 523 (2001).

Article III states, in relevant part, "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority..." U.S. Const. art. III, § 2, cl. 1. The requirements of Article III "are applicable where law of national applicability and affairs of national concern are at stake..." *Palmore v. United States*, 411 U.S. 389, 408 (1973). Federal law provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231.

Under the Supremacy Clause of the U.S. Constitution, "[t]he states have no power... to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by congress to carry into effect the powers vested in the national government." *M'Culloch v. State*, 17 U.S. 316, 317 (1819). "[T]here can be no criminal prosecution initiated in any State court for that which is merely an

offence against the general government." *Davis*, 100 U.S. at 262. "[T]he execution and enforcement of the laws of the United States, and the judicial determination of questions arising under them, are confided to another sovereign, and to that extent the sovereignty of the State is restricted." *Id.* at 267; *see also Denson v. United States*, 574 F.3d 1318, 1347 (11 Cir. 2009) ("[A]n officer of the United States cannot be held in violation of state law while simultaneously executing his duties as prescribed by federal law"). "Under such circumstances the police power of the state has no application." *State of Ohio v. Thomas*, 173 U.S. 276, 283 (1899); *see also Denson*, at 1347 ("[W]here any supposed right or claim under state law would impede an officer from performing his duties, it must relent") (quoting *Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920); *Thomas*, at 283). In addition, a violation of a duty by an election officer "is an offence against the United States, for which the offender is justly amenable to that government." *Ex parte Siebold*, 100 U.S. 371, 388 (1879) *abrogation recognized by Jones v. Hendrix*, --- U.S. ---, 143 S. Ct. 1857 (2023).

The State should be held to lack jurisdiction to prosecute an individual functioning as a U.S. Presidential Elector for actions taken as an Elector. Permitting State prosecution of Presidential Electors and members of the U.S. Electoral College who are exercising a federal, Constitutional function would obstruct the operations

of the federal government. The Court may furthermore remove the State action pursuant to the Supremacy Clause.

### IV. <u>CONCLUSION</u>

Pursuant to pursuant to 28 U.S.C. § 1442, 28 U.S.C. § 1455, and the Supremacy Clause, Defendant Cathleen A. Latham respectfully requests that the Court:

A.   Promptly examine Defendant's Notice of Removal of State Court Action to Federal Court;

B.   Order an evidentiary hearing to be held promptly;

C.   Remove the prosecution of *State of Georgia v. Trump et al.*, Case No. 23SC188947, in the Superior Court of Fulton County, Atlanta Judicial Circuit, to this Court;

D.   Notify the Superior Court of Fulton County of the removal of the prosecution and direct that the Superior Court of Fulton County proceed no further;

E.   Assert jurisdiction of this matter under either habeas or equitable relief and terminate or prohibit the State's prosecution; and

F.   Enter any orders as may be necessary or proper.

Respectfully submitted and signed pursuant to Federal Rule of Civil Procedure 11, this 25th day of August, 2023.

/s/William Grant Cromwell
William Grant Cromwell
State Bar of Georgia # 197240
CROMWELL LAW, LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Phone: (678) 384-5626
Email: bcromwell@cartercromwell.com

*Counsel for Mrs. Cathleen A. Latham*