**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | CIVIL ACTION NO. |
| | ) | 1:23-CV-03803-SCJ |
| | ) | |
| v. | ) | |
| | ) | RE: NOTICE OF REMOVAL |
| | ) | OF FULTON COUNTY |
| | ) | SUPERIOR COURT |
| CATHLEEN A. LATHAM, | ) | INDICTMENT NO. |
| | ) | 23SC188947 |
| Defendant. | ) | |

**STATE OF GEORGIA'S RESPONSE IN OPPOSITION TO**
**TO DEFENDANT CATHLEEN A. LATHAM'S NOTICE OF REMOVAL**

Based on a far-fetched factual premise and a strained legal theory,

Defendant Cathleen Latham asks this Court to move the criminal prosecution

charging her with multiple felony offenses currently pending in Fulton County

Superior Court to the Northern District of Georgia.  Her effort to remove is futile—

Defendant Latham was not a "federal official" within the meaning of 28 U.S.C. §

1442(a)(1), nor was she acting at the direction of any federal official carrying out a

federal function.  Instead, Defendant and the rest of the nominated slate of Trump

presidential electors falsely and without qualification represented themselves to be

"duly elected and qualified" electors at the direction of the losing Trump

presidential campaign—actions in furtherance of a criminal conspiracy that

resulted, in part, in the pending Fulton County Indictment.  Because she cannot meet any of the necessary legal requirements to support removal, the State of Georgia respectfully requests that this Court decline to authorize the removal.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. The Election and Certification of Presidential Electors

Following the November 3, 2020 presidential election in Georgia, Secretary of State Brad Raffensperger fulfilled his obligation as the State's chief election official by certifying the votes cast for all presidential candidates "not later than 5:00 P.M. on the seventeenth day following the date on which such election was conducted."  O.C.G.A. §§ 21-2-50(b), 20-2-499(b).  Governor Kemp then certified "the slates of presidential electors receiving the highest number of votes . . . no later than 5:00 P.M. on the eighteenth day following the date on which such election was conducted."  O.C.G.A. § 20-2-499(b).  Ex. 1 (Nov. 20, 2020 Certification).  This certification came after both (1) the initial counting of ballots, and (2) a statewide hand count ordered by the Secretary of State revealed that then-Candidate Joseph R. Biden had prevailed.

Consistent with the provisions of the relevant Georgia code, the losing Trump campaign was authorized to request a recount.  O.C.G.A. § 21-2-495(c)(1) (permitting recount where the margin of victory is less than one-half of one

percent).  The results of that recount, for the third time, confirmed a Biden win by a margin of 11,779 votes.  Ex. 2 (Secretary of State Certification of Recount). Governor Kemp certified the now-final results on December 7, 2020, alerting the National Archives and Records Administration that the State of Georgia had appointed the Democratic slate Electors of the President and Vice President for the State of Georgia with no qualification.  Ex. 3 (December 7, 2020 Certification).

### B. The Fraudulent Elector Scheme

Defendant and the other nominated electors representing the losing Trump campaign opted to pretend otherwise.  Despite the repeatedly confirmed fact that Trump had lost the presidential election in Georgia, and that the Republican-nominated slate of electors had consequently **not** been appointed presidential electors, Defendant and her cohorts mimicked the actions of the genuine Democratic slate of electors by meeting on December 14, 2020, at the State Capital.  [Doc. 1], 4 (acknowledging the group met at the Capital building). Defendant quite literally signed onto the farce, affixing her signature on the document that falsely represented the group were the "duly elected and qualified Electors," and purporting to give Georgia's 16 Electoral College votes to Trump. Ex. 4 (Fraudulent Elector Certificate).

Defendant, like her similarly situated co-defendants Shafer and Still, repeatedly refers to herself and her fellow nominee electors as "contingent," despite no such qualification being included in the certificate.  *Compare id. with* [Doc. 1], 4.  "Contingent electors," of course, are not presidential electors at all, and Defendant directs this Court to no relevant legal authority that would substantiate that the losing candidate's nominees have any recognized status after the counting is complete and results are certified.[1]  Either the contingency is met, and the "contingent electors" become actual presidential electors upon the electoral victory of their presidential candidate, or—as was the case here—the contingency never arises and the losing candidate's slate of electors plays no further role.

Nevertheless, Defendant and her fellow conspirators caused the false certificate to be sent to the President of the Senate, the Archives of the United States, the Georgia Secretary of State, and the Chief Judge of the Northern District of Georgia, as would be appropriate if the false slate of electors had been genuine.  Ex. 4.  As alleged in the Indictment, Latham and her co-defendants were part of a conspiracy to subvert the electoral process.  [Doc. 1-1], 30-32 (detailing scheme to have Trump elector nominees attempt to cast electoral votes in Georgia, Arizona,

---

[1]     "Contingent" is defined as "likely but not certain to happen" and "not necessitated: determined by free choice."  *Webster's Ninth New Collegiate Dictionary.  Black's Law Dictionary* (Rev. 4th Ed.) defines "contingent" as "possible, but not assured."

Michigan, Nevada, Pennsylvania, and Wisconsin, despite Trump's loss in each of those states).

### C. The Coffee County Breach of Election Equipment and Data

In addition to the fraudulent elector scheme, Defendant Latham is charged with participating in the plan to unlawfully access election equipment and data in the Coffee County, Georgia Election and Registration Office in furtherance of the criminal conspiracy.  [Doc. 1-1], 90-95.  With several co-defendants, Defendant conspired to access, steal, and distribute information contained in the Coffee County Election Office that included ballot images, voting equipment software and personal voter information.  *Id.* at 18.

As a result of her actions in both the fraudulent elector scheme and the Coffee County breach, Defendant and several co-defendants face a range of charges, including Violation of the Georgia RICO Act (O.C.G.A. §16-14-4), Impersonating a Public Officer (O.C.G.A. § 16-10-23), Forgery in the First Degree (O.C.G.A. § 16-9-1), False Statements (O.C.G.A. § 16-10-20), Criminal Attempt to File False Documents (O.C.G.A. § 16-4-1 and 16-10-20.1), two counts of Conspiracy to Commit Election Fraud (O.C.G.A. §§ 21-2-603, 21-2-566), Conspiracy to Commit Computer Theft (O.C.G.A. §§ 16-4-8, 16-9-93(a)), Conspiracy to Commit Computer Trespass (O.C.G.A. §§ 16-4-8, 16-9-93(b)),

Conspiracy to Commit Computer Invasion of Privacy (O.C.G.A. §§ 16-4-8, 16-9-93(c)), and Conspiracy to Defraud the State (O.C.G.A. § 16-10-21).  [Doc. 1-1] (Cts. 1, 8, 10, 12, 14, 32-37).

### D. Defendant Has Produced No Evidence That She Held Federal Office, Or That She Acted At The Direction Of Any Federal Official

In December 2020 through January 2021, at the time of the acts alleged to have been committed by Defendant in the Indictment, she was a private citizen holding no federal employment or office.  She insists, however, that removal is proper under 28 U.S.C. § 1442(a)(1) due to her "contingent presidential elector" status as a nominated presidential elector for the losing candidate, either because she was a federal official in her own right, or alternatively, that she was acting under a federal official (namely, then-President Trump).  [Doc. 1], 6-10.  *See* 28 U.S.C. § 1442(a)(1) (providing for federal jurisdiction over "any officer (or any person acting under that officer) of the United States" for or relating to "any act under color of such office" ).  Defendant fails to grapple with the plain facts that undermine that claim, including:

- Latham and the other Republican nominees were not genuine presidential electors, they were **impersonating** presidential electors by signing a certificate stating they were duly elected and certified when they had not been;

- Governor Kemp had certified on December 7, 2020, that the Democratic slate of presidential electors would represent Georgia,

with Republican nominees having no role in the counting of presidential electors;

- By December 14, 2020, there was no recount pending in Georgia nor was there any legal vehicle that could have potentially resulted in the "flipping" of Democratic presidential electors to be substituted with the Republican presidential nominees[2];

- Defendant's own assertion is that she acted pursuant to advice from Trump's "legal counsel for the purpose of preserving the challenge to the election results," not any true federal function, [Doc. 1], 10;

- Defendant makes no representation that she had direct contact with **any** federal official, going no further than to allege she took the advice of attorneys representing the Trump campaign. *Id.*

Defendant simply has not supported her assertion of "federal official" status with facts that would warrant any such finding.

## II. ARGUMENT

Defendant seeks to remove her pending criminal case under Section § 1455, on the basis that at the time she engaged in the conduct described in the Indictment

---

[2]   Even if the Trump campaign's election contest filed in Fulton County Superior Court on or about December 4, 2020 had been successful (which it could not have been, due to glaring procedural and substantive deficiencies; Plaintiffs ultimately voluntarily dismissed the case), the only lawful remedy that could be imposed by a court is a new election, not the "flipping" of one slate of electors for another. *See* O.C.G.A. § 21-2-527(d) (authorizing setting aside an election shown to be defective as to place in doubt the result, and permitting the court to call for a second election).

related to the fraudulent elector scheme,[3] she was a "federal officer" under 28

U.S.C. § 1442(a)(1).  She can make no such showing.  Federal officer removal is

limited to (1) any officer, agent, or agency of the United States (2) "for [or relating

to] any act under color of such office" so long as they can (3) "raise a colorable

defense arising out of its duty to enforce federal law."  *Florida v. Cohen*, 887 F.2d

1451, 1454-55 (11th Cir. 1989).  The removing party bears the burden of

demonstrating that removal is proper, and if the non-removing party "appropriately

challenges" the facts presented in the notice of removal, the removing party "must

support [its factual averments] by competent proof."  *People v. Trump*, 2023 U.S.

Dist. LEXIS 124733, *15 (S.D.N.Y. 19 July 2023) (citations omitted).

Here, Defendant cannot satisfy any of the three criteria.  She has not

marshalled sufficient facts to meet the first prong—Latham was not acting as, or at

the direction of, federal officials in any accepted understanding of that role.

Moreover, even legitimate presidential electors serve as agents of the individual

States, not as federal officials entitled to 28 U.S.C. § 1442(a)(1) removal.  *See Ray

v. Blair*, 343 U.S. 214, 224-25 (1952) (presidential electors are agents of the states,

not federal officers or agents).  Finally, Latham's explanation that she accepted

---

[3]      Defendant Latham makes no argument that the criminal charges related solely to her
unauthorized access of Coffee County election data and equipment (Counts 32-37) are
independently removable.  [Doc. 1].

advice from a Trump campaign attorney is not the Section 1442 equivalent of taking direction from a federal official within the scope of that official's role—at best, she and the other fraudulent electors followed the lead of the Trump campaign and from State Republican party attorneys to further the campaign's litigation and the party's goals, pursuits far outside the scope of removable activity.

With Latham's failure to overcome the first "federal official" hurdle, the inquiry can end. *City of Brunswick v. Honeywell Int'l, Inc.*, No. CV 222-132, 2023 U.S. Dist. LEXIS 155502, at *11 (S.D. Ga. Sept. 1, 2023) (after determining Defendant failed to satisfy that they were acting under direction of a federal officer, "the Court does not address whether Defendants satisfy the second and third prong, and the Court finds the federal officer removal statute does not apply"). But even should this Court consider the remaining prongs, Defendant falls well short. Impersonating certified presidential electors in service to a political campaign cannot be seriously within the scope of any federal role, and Defendant gives the legal analysis correspondingly cursory treatment. [Doc. 1], 10 ("Mrs. Latham acted as a Presidential Elector, and in acting as a Presidential Elector, her conduct was plainly connected to, or associated with, the federal duties of numerous officers of the United States."). None of the alleged crimes charged in the Indictment fall within the range of any federal official duties, least of all for

a person acting in furtherance of a political ally's purely campaign-related goals. "[T]he long-recognized purpose of federal-officer removal is the protection of federal *authority*[—t]here is no federal authority to protect here." *State v. Meade*, 2022 U.S. Dist. LEXIS 28535, *18 (S.D. Ohio Feb. 17, 2022) (emphasis in original) (citing *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)).

Similarly, Defendant's proffered federal defenses of Supremacy Clause immunity, First Amendment and Due Process, and ill-defined "jurisdictional defenses" find little support in the law; Defendant states declarations of applicability without legal or factual support. [Doc. 1], 11-16. As explained below, Defendant was not a Section 1442(a)(1) federal official, putting any Supremacy Clause or preemption defense outside her reach.

### A. Defendant Latham Is Not A Federal Official Within The Meaning Of Section 1442(a).

To repeat the governing standard that is now well-known to this Court, Section 1442(a) authorizes a defendant to remove a state criminal prosecution to federal court if the defendant is:

 [A]ny officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a)(1); *see also Hurt-Whitmire v. Georgia*, 336 F. App'x 882 (11th Cir. 2009). Section 1442 applicability is not unlimited, and Defendant's

10

impersonation of a presidential elector to further a conspiracy to overturn the 2020 presidential election, unsurprisingly, falls far outside its scope.

### 1. Defendant derives no federal officer status by impersonating a presidential elector.

Defendant's entire theory—that by virtue of her role as a "contingent" presidential elector, she took on the role of a federal officer entitled to Section 1442(a) removal—finds no support in the facts or the law. Defendant was never a recognized presidential elector with any role to fulfill, federal or otherwise.

By the time Defendant and the other losing Republican elector nominees met, Governor Kemp had twice certified the Democratic slate of presidential electors; there was no valid means by which the group could have been "duly elected and qualified," as the document represented, when the Democratic slate had already filled that role and there was no legal mechanism for a slate of electors to be "flipped" to the losing candidate. *Compare* Ex. 4 (Fraudulent Elector Certificate) *with* Ex. 3 (Dec. 7, 2020 Certification); *see also* O.C.G.A. § 21-2-527(d) (remedy for an election contest is setting aside an election shown to be defective, and scheduling a second election). Defendant asks this Court to credit a fiction: first, she impersonated a "presidential elector," and then, based only on that pretense, she demands legal recognition of that status.

Moreover, Defendant's own representations to the Court undermine her argument that she believed she was a true presidential elector—she acted in compliance with the directives of the Trump campaign's legal counsel "for the purpose of preserving the challenge to the election results." [Doc. 1], 10. Advancing the election contest of a political ally serves no federal function, and provides no basis to conclude she acted in any federal role. *See generally New York v. Fried*, 897 F. Supp. 669, 670 (N.D.N.Y. 1995) ("[Defendant] has failed to submit any evidence along with the instant petition for removal which demonstrates that he has been performing work for the federal government either as its employee or at its request").[4] Here, Defendant was simply the nominated elector for the losing presidential candidate, taking direction from the failed candidate's campaign—a status that affords no removal protection.

Repeated invocations to "precedent" allegedly set in Hawaii during the 1960 presidential election misses the mark by a wide margin. *See* [Doc. 1], 2-3; Doc. 1-

---

[4]       Even in the civil context, the mere assertion that a person is acting as a federal officer is insufficient to justify removal absent some evidentiary basis. *See generally Honeywell Int'l, Inc.*, 2023 U.S. Dist. LEXIS 155502 (rejecting removal where Defendants failed to establish they "acted under" a federal officer); *Swanstrom v. Teledyne Cont'l Motors, Inc.*, 531 F. Supp. 2d 1325, 2008 U.S. Dist. LEXIS 24020 (S.D. Ala. 2008) (airplane manufacturer unable to establish legitimate basis for federal officer removal because it did not establish that it was designated in any manner as representative of FAA or to act on the agency's behalf in performing official duties).

2 (affidavit of Todd Zywicki[5]).  First, and this principle hardly seems necessary to explain, actions that did not result in prosecution 60 years ago—in a different jurisdiction with different election code and criminal statutes, presided over by different prosecuting agencies, and with differing substantive evidence of criminal intent—provides zero protection for Defendant Latham and her co-defendants who conspired to advance the 2020 fraudulent elector scheme in Georgia.

Second, the factual situations are so readily distinguishable as to make the comparison meaningless.  In 1960, by the December 19 date when the Hawaii electors met, the Republican slate of electors had been certified by the Governor based on the initial tally of votes, but due to the close margin of less than 150 votes, an official recount was ongoing.  In the present case, when Defendant Latham and the other fraudulent electors met, two recounts had already been **completed**, each of which confirmed a margin of victory for then-candidate Biden of more than eleven thousand votes.

---

[5]     The State objects to the relevance of the affidavit of Mr. Zywicki insofar as it offers an interpretation of Georgia law and any legal opinion.  The Court has the responsibility of determining the relevant facts and applying the applicable law, and those straightforward tasks would hardly benefit from the parties parading in untold numbers of experts with varying degrees of qualification and credibility to opine on the issues.  Particularly unhelpful are Mr. Zywicki sweeping declarations of fact with zero authority to support them.

Additionally, in Hawaii, when the recount resolved in the Democratic candidate's favor (President John F. Kennedy) on December 28, and only after a court affirmed the process, the Governor of Hawaii **re-certified** the election and appointed the Democratic slate of electors.[6]  Ex. 6 (Hawaii re-certification).  It was this official certification of the Democratic electors that was counted in the Electoral College tally on January 6, 1961.  Defendant and her cohort of fraudulent electors had no such official stamp of approval.  Their losing effort was never reversed by a recount, never subjected to the supervision of any court, never certified by the Governor, and never sent through official channels to the Senate.  Instead, it was used to further a clumsy but relentless pressure campaign on the Vice President and state legislatures, and as a means to publicly undermine the legitimate results of the presidential election.  There is no guiding precedent to be found here.

### 2. Presidential electors perform a federal function through the exercise of State authority and are not themselves federal officials.

A more fundamental shortcoming with Defendant's position is that even the genuine presidential electors sanctioned by the State based on a certified election

---

[6]     While the Zywicki affidavit refers to an attached exhibit (Exhibit B) that includes the referenced Hawaii certification documents, no exhibits were electronically filed or otherwise served on counsel for the State.  [Doc. 1-4], 8 (¶ 12).

are State actors, not federal, and well outside the scope of appropriate federal

removal.  As the United States Supreme Court has noted:

> [T]he presidential electors exercise a federal function in balloting for President and Vice-President **but they are not federal officers or agents** any more than the state elector who votes for congressmen. They act by authority of the state that in turn receives its authority from the Federal Constitution.

*Ray v. Blair*, 343 U.S. at 224-25 (emphasis added); *see also Chiafalo v.*

*Washington*, __ U.S. __, 140 S. Ct. 2316, 2324-25 (2020) (citing *Ray*, accepting

that electors are state actors, and finding no constitutional prohibition on states

imposing penalties for faithless electors).

Defendant's particular standing as a fraudulent elector—uncertified and

unofficial with no state or federal authority—makes a detailed exploration into the

history and evolution of presidential electors largely unnecessary for present

purposes; it is enough to note that it has long been recognized that:

> The sole function of the presidential electors is to cast, certify and transmit the vote of the State for President and Vice President of the nation. **Although the electors are appointed and act under and pursuant to the Constitution of the United States, they are no more officers or agents of the United States than are the members of the state legislatures when acting as electors of federal senators, or the people of the States when acting as electors of representatives in Congress**.

*In re Green*, 134 U.S. 377, 379-80 (1890) (emphasis added); *see also Walker v.*

*United States*, 93 F.2d 383, 388 (8th Cir. 1937) ("It is contended by defendants

that presidential electors are officers of the state and not federal officers. We are of the view that this contention is sound and should be sustained." (citation omitted)). Instead, the Constitution provides that presidential electors act under State authority. *Ray*, 343 U.S. at 224-25. And while Article II and the Twelfth Amendment give States broad power over electors, those provisions give electors themselves no rights. *Chiafalo*, 140 S. Ct. at 2328.

### 3. Defendant was not acting at the behest of any federal official performing an official function; the evidence shows at most she was a political actor serving a campaign function.

Defendant argues to this Court that, even if she were not a federal official in her own right, she was acting at the behest of then-President Trump and his campaign, and that translates into federal officer status for her criminal actions. [Doc. 1], 10 ("Mrs. Latham was furthermore acting to assist the President, and was following the advice of the President's legal counsel for the purpose of preserving the challenge to the elections results."). But even accepting Defendant's representation that her intent was to assist the then-President (and now co-defendant) Trump in employing the fraudulent elector scheme in states across the country, that would be assisting Trump in his personal capacity as a *candidate*, not as President. As the testimony already before this Court has demonstrated, the then-President had no authority whatsoever to direct action of State certification or

16

administration of electors.  Ex. 5 (Removal Hrg. Tr. at 189, *State of Georgia v. Mark Meadows* 1:23-CV-03621-SCJ (N.D. Ga. Aug. 28, 2023)).  The litigation brought in Fulton County Superior Court that Defendant and her co-defendants were trying to advance was brought—and could only have been brought—by Trump as an individual candidate and the Trump campaign, not Trump in his official role as President.  *See DONALD J. TRUMP, in his capacity as Candidate for President, DONALD J. TRUMP FOR PRESIDENT, INC., and DAVID SHAFER, in his capacity as a registered voter and Presidential Elector pledged to DONALD TRUMP for President. v. Raffensperger et al.*, Case No. 2020CV343255 (Fulton Cty. Super. Ct.).  The facts simply do not support that Defendant acted under the direction of any federal official in an official capacity.

While the phrase "acting under" is broad and Courts will "liberally construe" this portion of § 1442(a)(1), that does not make the criteria meaningless.  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).  Even under that deferential standard, a private person working to assist a political campaign cannot clear that bar.  A "private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior."  *Watson*, 551 U.S. at 152 (emphasis in original; citations omitted).  In other words, the private person must help federal officers fulfill a basic governmental task that the government

otherwise would have had to perform.  *Id.* at 153-54.  Defendant identifies no "basic governmental task" that was fulfilled by her impersonation of genuine presidential electors certified by the State of Georgia.

One can speculate that the reason Defendant identifies no governmental task she assisted with undertaking is because there was none—her actions as charged were to advance the purely personal and political goals of securing a second term for her preferred candidate at any cost, an undertaking decidedly outside the scope of any required governmental task.  Federal law and regulations explicitly separate campaign activities from those of the government itself, placing campaign work performed at the behest of a federal official **outside** the scope of federal removal. *See* 5 U.S.C. §§ 7323(a), 7324(a) (prohibiting government employees from engaging in partisan political activity).  Defendant could not have been acting to assist or carry out campaign functions of a federal official when those actions were entirely outside the scope of any legitimate federal function.  Because the first requirement of removal has not been satisfied, this inquiry can end here.

**B. Nor Has Defendant Demonstrated That She Has Been Charged "For Or Relating To Any Act Under Color Of Such Office."**

Defendant offers a few unconvincing and conclusory sentences hoping to satisfy the second requirement that her engagement in this criminal conspiracy to overturn the 2020 presidential election related to any act under color of a legitimate

federal office.  [Doc. 1], 10.  Her bare assertions fall far short of the necessary showing.

"The phrase 'relating to' . . . requires only a 'connection' or 'association' between the act in question and the federal office." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) (internal citations omitted).  While not a particular high hurdle, the caselaw is clear that "[n]ot every act of or on behalf of a federal officer is an act under color of office."  *People v. Trump*, 2023 U.S. Dist. LEXIS 124733, at *20 (S.D.N.Y. July 19, 2023).  "[T]he person seeking the benefit of [federal officer removal] should be candid, specific and positive in explaining his relation to the transaction growing out of which he has been indicted, and in showing that his relation to it was *confined to his acts as an officer*."  *Colorado v. Symes*, 286 U.S. 510, 520 (1932) (emphasis added).  Defendant Latham offers no such explanation.

The actions of the group of fictitious presidential electors relate in no way to any official act by a federal officer.  As discussed above, "contingent electors" are not electors at all, and presidential electors are in any event *not* federal officers.  To the extent Defendant contends that she and her co-defendants were directed to act by then-President Trump in his official capacity, that representation (1) has no factual support and (2) cannot survive the slightest scrutiny.  Defendant points to

communication with only an unnamed "legal counsel" for Trump advising on campaign litigation, with no federal connection at all.  [Doc. 1], 10.  She has produced no evidence of any communication or direction from any federal official acting within the scope of any federal function, and cannot satisfy her burden to show that impersonating a presidential elector was under "the color" of any officer's federal duties.

Reliance on Trump the candidate provides no support; the law recognizes that even a President is not entitled to immunity for "unofficial acts grounded purely in the identity of his office."  *Clinton v. Jones*, 520 U.S. 681, 693 (1997).  There is an "outer perimeter" to a president's legitimate federal function beyond which he engages in private conduct, and personal campaign activity surely falls into that private activity outside a president's legitimate federal function.  *Id.*; *see also Trump v. Vance*, ___ U.S. ___, 140 S. Ct. 2412, 2429 (2020) (then-President Trump's personal papers were distinct from official documents and not entitled to the heightened showing required for a subpoena).  Employing an analysis that considered "the relationship of the challenged conduct to the claimed corresponding function of the President," another federal court has already found that Trump's acts of "direct outreach to state election officials" were "not official acts."  *Thompson v. Trump*, 590 F. Supp. 3d 46, 82-83 (D.D.C. 2022).

Similarly, Defendant's undeniably false representation that she and the other losing nominated electors were "duly elected and qualified," along with the attempt to have the votes of the losing slate counted in the Electoral College "do not relate to [the President's] duties of faithfully executing the laws, conducting foreign affairs, commanding the armed forces, or managing the Executive Branch." *Id.* at 84. "They entirely concern his efforts to remain in office for a second term." *Id.*

Further, "a sitting President is prescribed no role" in the election of a president. *Id.* at 77.  While the Constitution and the Electoral Count Act specify the duties of various officials in Congress and at the state level, there is no role whatsoever for the president to play in any State's presidential election certification process, and thus there is no authority that Defendant can cite to claim her activities were taken "under color of office," even if done at the behest of the then-president. *See id.* at 77-78.  Just as Defendant has failed to satisfy the federal official requirement, this removal inquiry should end for the independent reason that she has not satisfied the second requirement for removal.

### C. Defendant Has No Colorable Federal Defense

As has already been established, Defendant fails to clear the first two hurdles of the Section 1442(a) criteria, and remand is appropriate.  But she falls short of the final requirement, as well.  To remove a case under § 1442, a defendant also

must raise a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 136 (1989).  In the context of removal, "colorable" means "plausible." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).  In her Notice, Defendant throws out several supposed available federal defenses, none of which have any applicably to the charges she faces because **she had no federal role to carry out**.  [Doc. 1], 10-16.

The first potential federal defense raised is Supremacy Clause immunity, which requires a defendant to show both that she was performing "an act which [s]he was authorized to do by the law of the United States" and, in performing that authorized act, "[s]he did no more than what was necessary and proper for [her] to do." *In re Neagle*, 135 U.S. 1, 75 (1890).  In the Eleventh Circuit, a defendant's claim of Supremacy Clause immunity is negated by evidence that the individual acted out of "personal interest, malice, actual criminal intent, or for any other reason than to do [their] duty as [they] saw it." *Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982).

Defendant, of course, had no federal duty, even if she had been an actual presidential elector.  The fact that she and the other fraudulent electors pretended to be duly elected and qualified confers no federal official standing whatsoever, and no federal action to be protected with immunity.  The activities in which she

conspired with then-President Trump and others were all "unofficial" activities

concerning campaign litigation and Trump's efforts to remain in office for a

second term, and there is no federally protected authority for a president or anyone

acting on his behalf to take any actions concerning the administration of a

presidential election under either the Constitution or federal law.  A claim of

immunity for unofficial acts cannot be "grounded purely in the identity of [the

President's] office."  *Clinton*, 520 U.S. at 695.

Next, Defendant's perfunctory assertion of a preemption defense—for which

she cites no authority nor makes any factual showing, and even neglects to plead

with any specificity—fails for the same reason. She does not identify any specific

federal preemption defense, instead she (unhelpfully) references unspecific

"jurisdictional defenses."  [Doc. 1], 14.  By way of context, the Supremacy Clause

of Article VI of the Constitution provides that the laws of the United States "shall

be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any

State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2.  When courts

consider issues that arise under the Supremacy Clause (i.e., preemption issues),

they start with the assumption that the historic police powers of the States are not

superseded by federal law unless preemption is the clear and manifest purpose of

Congress.  *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121-22 (11th Cir. 2004) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

The Supreme Court has identified three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption.  *Wisc. Public Intervenor v. Mortier*, 501 U.S. 597, 604-05 (1991).  Defendant has not identified which type of preemption purportedly applies in her case, and frankly it is not clear to the State what she is alleging.  As a general principle, however, even if Congress has neither expressly preempted state law nor occupied the field, state law is only preempted when it **actually** conflicts with federal law, commonly known as "conflict preemption."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000).  Again, there was **no federal role** inherent in Defendant's impersonation of a presidential elector.  As such, there is no federal law that could preempt the State charges now leveled against Defendant.

Similarly, while there is no demonstrable basis for federal authority related to Defendant's actions, there is ample evidence of personal, political, and unofficial intentions and activities—all of which make the cursory claims of other federal defenses unavailable.  The First Amendment provides no protection from criminal liability in this instance, when the underlying speech is false.  *See generally Bill Johnson's Rests, Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("Just as

24

false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition." (internal citation omitted)).  And while Defendant may certainly have a right to petition the government for redress, she has no right to present documents making false representations of fact, such that a due process defense is even arguably available.  *See* Ex. 4 (Fraudulent Certificate representing the losing candidate's nominated electors were "duly elected and qualified electors").  Defendant has no colorable federal defense.

## CONCLUSION

Defendant Latham had no federal official role as the losing presidential candidate's nominated elector, either in her own right or as an agent of an actual federal officer.  Her actions had no relation to the "color of federal office" of any actor. Instead she explicitly acted at the direction of the Trump campaign.  And finally, she fails to support any colorable federal defense.  In short, Defendant has failed to support any of the requirements to satisfy removal pursuant to Section 1442(a), and her effort to remove should be denied.

Respectfully submitted, this 7th day of September 2023.

**FANI T. WILLIS**
**DISTRICT ATTORNEY**
**ATLANTA JUDICIAL CIRCUIT**

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Atlanta Judicial Circuit
Georgia Bar No. 306674
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
anna@crosskincaid.com

F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
Fmcdonald.wakeford@fultoncountyga.gov

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this pleading complies with the Local Rules of this Court, including Local Rules 5.1(C) and 7.1(D) in that it is double-spaced and composed in 14-point Times New Roman font.

This 7th day of September 2023.

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Atlanta Judicial Circuit
Georgia Bar No. 306674