IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE STATE OF GEORGIA ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CATHELEEN LATHAM ) <br> ) <br> Defendant. ) <br> ) | CIVIL CASE NO. <br> 1:23-CV-03803-SCJ <br><br> (Removed from the Superior Court of Fulton County, Criminal Action File No. 23SC188947) |

## REPLY OF DEFENDANT CATHLEEN LATHAM TO THE STATE OF GEORGIA'S RESPONSE TO HER NOTICE OF REMOVAL

The State's Response ignores not only the ECA but also the legal precedent established during the 1960 presidential election in Hawaii, which expressly authorizes Ms. Latham's conduct as a contingent presidential elector on December 14, 2020.

**I.   Ms. Latham was Acting as a Federal Officer in her Capacity as a Contingent Presidential Elector when Engaged in the Conduct for which the State Charged Her.**

The State advances two main arguments for why Ms. Latham was not acting as a federal officer for the purposes of 28 U.S.C. § 1442(a) removal: (1) the contingent elector role is a fiction; and (2) presidential electors—contingent or otherwise—are not federal officers. In making these arguments, however, the State

ignores the plain text of the ECA and the Hawaii case law from the 1960 presidential election. Furthermore, the State fails to address the case law acknowledging (1) that presidential electors perform federal functions when meeting and casting ballots and (2) that the states do not possess any authority to interfere with Congress' role in counting and adjudicating electoral ballots.

### A. Presidential electors are federal officials for purposes of federal officer removal under Section 1442(a).

The State argues that presidential electors—contingent or otherwise—are state officials for purposes of removal and, therefore, not entitled to federal officer removal. However, in doing so, the State ignores the distinction between the *appointment* of presidential electors and the federal role presidential electors perform in *meeting and casting ballots*.[1]

The U.S. Constitution creates presidential electors. U.S. Const. art. II, § 1, cl. 2. While the Constitution grants states the authority to set the manner in which presidential electors are appointed, the Constitution vests in Congress the sole authority to receive, adjudicate, and count ballots from presidential electors. U.S. Const. amend. XII. Furthermore, the United States Supreme Court has expressly recognized that presidential electors "exercise a federal function in *balloting* for

---

[1] Ironically, the State could not disagree that the presidential electors (Latham, et al) are "Federal officers" subject to prosecution under the insurrection clause of the 14th Amendment.

2

President and Vice-President." *Ray v. Blair*, 343 U.S. 214, 224 (1952) (emphasis added). Indeed, the Twelfth Amendment "tells electors to meet in their States, to vote for President and Vice President separately, and to transmit the lists of all their votes to the President of the United States Senate for counting." *Chiafolo v. Washington*, __ US. __, 140 S. Ct. 2316, 2324–25 (2020). Such conduct is an "exercise [of] federal functions under" and a "discharge of duties in virtue of authority conferred by[] the Constitution of the United States." *Burroughs v. United States*, 290 U.S. 534, 545 (1934).

The exercise of a federal function in meeting and casting presidential electoral ballots is distinguishable from the authority states possess under the *Appointment Power*. Under the Appointment Power, the states may set the manner in which presidential electors are appointed. *See* U.S. Const. art. II, § 1, cl. 2 ("The Presidential Electors Clause"). However, that authority is limited to the specifically-delegated authority of *appointment*. *See U.S. Term Limits*, 514 U.S. 779, 804 (1995) ("[P]owers over the election of federal officers had to be delegated to, rather than reserved by, the States."). The Presidential Electors Clause is an "express delegation[] of power to the States to act with respect to federal elections." *Id.* at 805.

As such, the states do not hold any power to regulate the manner of receiving, adjudicating, and counting of ballots from presidential electors without express authorization. As the United States Supreme Court stated in *McCulloch v. State*, states do not have the power to "retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress to carry into effect the powers vested in the national government." *McCulloch v. State*, 17 U.S. 316, 317 (1819). Therefore, the only authority the states may exercise over presidential electors is the authority expressly granted to them by the Constitution or Congress. The Constitution and Congress grants states the authority to: (1) set the manner of appointment for presidential electors, U.S. Const. art. II, sec. 1, and (2) adjudicate disputes about presidential elector ballots on or prior to the Safe Harbor Deadline, 3 U.S.C. § 5.

The Government relies on *Ray v. Blair*, 343 U.S. 214 (1952), and *Chiafalo v. Washington*, __ U.S. __, 140 S. Ct. 2316 (2020), for the proposition that presidential electors are state rather than federal officers for purposes of removal under Section 1442. However, those cases stand for the proposition that States may require and enforce elector "pledges" to vote for certain candidates as a requirement for appointment pursuant to the specifically delegated *Appointment* Power. *Ray*, 343 U.S. at 231 (holding that the Twelfth Amendment does not bar a political party from

4

requiring a pledge to support its presidential candidate); *Chiafolo*, 140 S. Ct. at 2320 (holding that a state may penalize a presidential elector for breaking his pledge and voting for someone other than the presidential candidate who won his or her state's popular vote). Though these cases state *in dicta* that presidential electors are not "federal officers or agents," these cases expressly recognize that presidential electors "exercise a federal function in *balloting* for President and Vice-President." *Ray*, 343 U.S. at 224 (emphasis added).

Furthermore, these cases do not involve the broad application of federal officer removal under Section 1442. *See, e.g., Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("The federal officer removal statute is not 'narrow' or 'limited.'"); *Florida v. Cohen*, 887 F.2d 1451, 1454 n.4 (11th Cir. 1989) (noting that courts should give a "broad reading" to Section 1442(a)(1)). Even assuming that Ms. Latham acted as a state officer at the time she was appointed as a presidential elector nominee, she acted as a federal officer when she met and cast her ballot as a contingent presidential elector. Courts have held that officers who hold both state and federal offices are entitled to removal under Section 1442(a)(1). *See Georgia v. Heinze*, 637 F. Supp. 3d 1316, 1322 (N.D. Ga. 2022) (finding that a county sheriff's deputy was entitled to removal as a federal officer because he was acting in his capacity as a United States Marshal during his involvement in the charged conduct); *Ohio v. Meade*, No.

5

2:21-cv-5587, 2022 WL 486294, at *3 (N.D. Ohio Feb. 17, 2022) (finding that law enforcement officer who was both a Special Deputy United States Marshal and a county deputy sheriff qualified for removal as a federal officer). At minimum, Ms. Latham—in her capacity as a presidential elector—was both a state and federal officer for purposes of Section 1442 removal and, as such, is still entitled to removal.

**B. The State ignores the ECA and the Hawaii precedent when arguing that the contingent elector position is a fiction.**

The U.S. Constitution vests in Congress alone the authority to receive, adjudicate, and count presidential elector ballots or returns. *See* U.S. Const. amend. XII. Pursuant to this authority, Congress enacted the ECA. 3 U.S.C. § 1 *et seq.*[2]

Notably, the ECA expressly contemplates situations in which Congress receives multiple slates of presidential elector ballots from a state. *See* 3 U.S.C. § 15. Indeed, the ECA provides that Congress must open, present, and act upon "all the certificates and *papers purporting to be certificates* of the electoral votes." *Id.* (emphasis added). In other words, the ECA expressly provides that Congress is to receive slates of competing presidential elector ballots from the same state and sets

---

[2] Congress amended the ECA through the Electoral Count Reform and Presidential Transition Improvement Act of 2022, which went into effect on December 29, 2022. Therefore, the relevant version of the ECA applicable to this case is the pre-2022 version. As such, all citations to the ECA are to the prior version of the ECA, which was codified in 1948.

out a specific framework Congress must follow to determine which slate of ballots to count. *Id.*

In such disputes, the ECA delegates to states limited authority to decide which slate of ballots Congress must count. *See* 3 U.S.C. §§ 5, 6, 15. Specifically, the ECA provides that if a dispute arises concerning the appointment of a state's presidential electors, then the state's adjudicative body (*i.e.*, a court in a judicial contest) must issue a final decision regarding that dispute at least six days before the date the presidential electors must meet and cast their ballots (the "Safe Harbor Deadline"). 3 U.S.C. § 5. If the state's adjudicative body does so, then its decision is binding on Congress when Congress counts the electoral ballots on January 6. *Id.* However, if the state's adjudicative body fails to issue a final decision by the Safe Harbor Deadline, in this case 12/8/20, then Congress holds the authority to resolve any remaining disputes. 3 U.S.C. §§ 5, 6, 15.

In short, the ECA establishes a three-step framework to address disputes regarding competing slates of presidential electoral ballots and determine which of the slates Congress must count:

    (1)    If the state's adjudicative body (*i.e.*, a court in a judicial contest) issues a final determination by the Safe Harbor Deadline of any controversy or contest concerning which slate of ballots to count, then that

7

determination is "conclusive" and "shall govern" when Congress counts the electoral votes.

(2) If the state's adjudicative body fails to issue a final determination as discussed in Step One, then both houses of the United States Congress must agree on which of the competing slates of ballots are the true ballots from the state. If the House and Senate agree on which slate of ballots is the true return from the state, then Congress must count the agreed-upon ballots.

(3) If the House and Senate fail to agree on which slate of ballots is the true return from the state as discussed in Step Two, then Congress must count the electoral ballots certified by the state's governor.

3 U.S.C. §§ 5, 6, 15.

In its Response, the State completely ignores the three-step framework established by the ECA. The State's Response is based on the false premise—which it repeats without any supporting authority—that Ms. Latham was a "sham elector" and "never a certified or recognized presidential elector with any elector role to fulfill." It is the removing party's theory of the case that is accepted for purposes of the removal analysis, not the State's theory of the case. *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 432 (1999). Ms. Latham's position for removal is that she

was appointed under state law in March, 2020 and legally exercised a federal function in balloting for President.

Furthermore, the State completely ignores the legal precedent established by Hawaii courts in the 1960 presidential election. In that election, the State of Hawaii initially certified Republican candidate Richard Nixon as the winner of the state. Supporters of Democratic candidate John F. Kennedy filed a legal action contesting the election, alleging vote irregularities. That legal action was still pending at the time the law mandated that Hawaii's presidential electors meet and cast their votes. Both the Republican nominees and the Democratic nominees met and cast their votes for their respective candidates. After both sets of presidential electors cast their ballots, the court determined that Kennedy prevailed in the election, and the election was re-certified in Kennedy's favor. Hawaii's Governor transmitted a subsequent Certificate of Ascertainment on behalf of the State stating that, as a result of the lawsuit, the electoral votes of Hawaii were to be recorded in favor of Kennedy. Congress ultimately counted the Democratic nominees' ballots instead of the Republican nominees' ballots.

Concerning the 2020 general election, the Safe Harbor Deadline was December 8, 2020. By that date, a lawsuit contesting the election remained pending in Fulton County Superior Court, meaning that Georgia's adjudicative body had not

9

issued a final decision by the Safe Harbor Deadline. *See Trump v. Raffensperger*, No. 2020CV343255. Therefore, at the time Ms. Latham cast her ballot as a contingent presidential elector on December 14, 2020, in accordance with the Hawaii precedent, Step Two from above applied. As such, at the time Ms. Latham cast her ballot, the House and Senate possessed the authority to agree on which of the competing slates of ballots were the true returns from Georgia.

The State fails to acknowledge that, at the time Ms. Latham cast her ballot, neither the Republican elector nominees nor the Democratic elector nominees could claim to be the "true" presidential electors, as a matter of law. Rather, both sets of nominees were contingent presidential electors on December 14, 2020, because Congress, which *alone* held the authority to adjudicate which slate of ballots to count, had not yet rendered a decision. Likewise, and contrary to the State's assertion, Governor Brian Kemp's certification on December 7, 2020, of the Democratic slate of presidential electors had no legally binding effect on Congress. Rather, Governor Kemp's certification would only become binding on Congress had the House and Senate disagreed as to which of the competing slates of ballots were the true ballots from Georgia.

Additionally, the election contest was relevant to the Congress' counting of electoral ballots because (1) Congress, after examining the results of the election

10

contest, could have determined that the Republican nominees' slate of ballots was the true returns from Georgia, *see* 3 U.S.C. § 15, and (2) Governor Kemp could have re-certified the Republican elector nominees as the presidential electors from Georgia based on the court's decision in the judicial contest.

## II. Ms. Latham was Acting Under the Color of Her Office.

The position of the contingent presidential elector is a legitimate and recognized federal office under the ECA and the Hawaii precedent. The State has stated that Ms. Latham's conduct in meeting and casting a ballot on 12/14/20 is illegal.

Such conduct is exactly what the ECA and Twelfth Amendment require of presidential electors. *See* U.S. Const. amend. XII; 3 U.S.C. § 15. Indeed, the Supreme Court characterizes such conduct as a "federal function." *Ray*, 343 U.S. at 224.

Finally, the "hurdle erected by this requirement is quite low." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017). Section 1442(a)(1) provides that "removable claims must be 'for or relating to any act' under color of office." 28 U.S.C. § 1442(a)(1). The Eleventh Circuit Court of Appeals interprets the phrase "relating to" broadly. *Caver*, 845 F.3d at 1144. Thus, Ms. Latham, by meeting and casting her ballot on December 14, 2020, in accordance with the ECA and Hawaii

11

precedent, was acting under the color of her office as a contingent presidential elector.

## III. Contrary to the State's Assertion, Ms. Latham has Colorable Federal Defenses.

### The First Amendment protects Ms. Latham's conduct.

The First Amendment protects Ms. Latham's conduct as a contingent presidential elector because such conduct amounts to political expression, association, and expressive conduct. *See Smith v. Ark. State Highway Emp., Loc. 1315*, 441 U.S. 463, 464 (1979) ("The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances."); *see also Clingman v. Beaver*, 544 U.S. 581, 586 (2005); *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). To the extent the State asserts such conduct is criminal, Ms. Latham's conduct was justified because her conduct was in "reasonable fulfillment of her duties as a government officer". *See* O.C.G.A. § 16-3-20(2). While the State appears to argue the merits of Ms. Latham's asserted defenses, a colorable federal defense under section 1442 must only be plausible, see *Magnin*, 91F.3d at 1427 (Citing Mesa, 489 U.S. at 133; quoting *Willingham*, 395 U.S. at 406-407).

## CONCLUSION

For the foregoing reasons and the reasons set out in Defendant Cathleen Latham's Notice of Removal, this case is subject to removal pursuant to 28 U.S.C. §§ 1442(a) and 1455.

Respectfully submitted this 15th day of September, 2023.

CROMWELL LAW, LLC

*/s/William Grant Cromwell*
William Grant Cromwell
State Bar of Georgia # 197240
CROMWELL LAW, LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Phone: (678) 384-5626
Email: bcromwell@cartercromwell.com

*Counsel for Mrs. Cathleen A. Latham*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| THE STATE OF GEORGIA ) | |
| ) | |
| Plaintiff, ) | CIVIL CASE NO. |
| ) | 1:23-CV-03803-SCJ |
| v. ) | |
| ) | (Removed from the Superior Court |
| CATHLEEN LATHAM ) | of Fulton County, Criminal Action |
| ) | File No. 23SC188947) |
| Defendant. ) | |
| ) | |

## CERTIFICATE OF SERVICE
## AND COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that on the date set forth below, a true and accurate copy of the foregoing, which has been prepared using 14-point Times New Roman font, was filed electronically with the clerk of the United States District Court for the Northern District of Georgia. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF-registered parties. Parties may access this filing through the Court's CM/ECF system.

This the 15th day of September, 2023.

*/s/William Grant Cromwell*
William Grant Cromwell
State Bar of Georgia # 197240
CROMWELL LAW, LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Phone: (678) 384-5626
Email: bcromwell@cartercromwell.com

*Counsel for Mrs. Cathleen A. Latham*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| THE STATE OF GEORGIA<br><br>Plaintiff,<br><br>v.<br><br>CATHELEEN LATHAM<br><br>Defendant. | CIVIL CASE NO.<br>1:23-CV-03803-SCJ<br><br>**(Removed from the Superior Court of Fulton County, Criminal Action File No. 23SC188947)** |

## CERTIFICATE OF SERVICE

On September 15, 2023, the foregoing ***Reply of Defendant Cathleen Latham to the State of Georgia's Response to Her Notice of Removal*** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

This the 15th day of September, 2023.

/s/*William Grant Cromwell*
William Grant Cromwell
State Bar of Georgia # 197240
CROMWELL LAW, LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Phone: (678) 384-5626
Email: bcromwell@cartercromwell.com

16