# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA
**2211 UNITED STATES COURTHOUSE**
**75 TED TURNER DRIVE, SW**
**ATLANTA, GEORGIA 30303-3361**

KEVIN P. WEIMER
DISTRICT COURT EXECUTIVE
 AND CLERK OF COURT

DOCKETING SECTION
404-215-1655

October 6, 2023

Clerk's Office
U.S. Court of Appeals
Eleventh Circuit
56 Forsyth Street, NW
Atlanta, Georgia      30303

**U.S.D.C. No.:** 1:23-cv-3803 -SCJ
**U.S.C.A. No.:** 00-00000-00
**In re:**        **The State of Georgia v. Cathleen Alston Latham**

Enclosed are documents regarding an appeal in this matter.   Please acknowledge receipt on the enclosed copy of this letter.

| | |
|---|---|
| **X** | **Certified copies of the Notice of Appeal, Clerk's Judgment, Opinion & Order and Docket Sheet appealed enclosed.** |
| _____ | This is not the first notice of appeal. Other notices were filed on . |
| _____ | There is no transcript. |
| **X** | **The court reporter Dianne Peede.** |
| _____ | There is sealed material as described below: . |
| _____ | Other: . |
| **X** | **Fees paid electronically on 10/6/23. (Receipt# AGANDC-12935354)** |
| _____ | Appellant has been   leave to proceed *in forma pauperis*. |
| _____ | This is a bankruptcy appeal.   The Bankruptcy Judge is . |
| _____ | The Magistrate Judge is . |
| **X** | **The District Judge is Steve C. Jones.** |
| _____ | This is a **DEATH PENALTY** appeal. |

Sincerely,

Kevin P. Weimer
District Court Executive
and Clerk of Court

By:   /s/P. McClam
Deputy Clerk

4months,APPEAL,CLOSED

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: <u>1:23–cv–03803–SCJ</u>

The State of Georgia v. Latham
Assigned to: Judge Steve C. Jones
Related–miscellaneous Cases:  1:23–cv–03621–SCJ
          1:23–cv–03792–SCJ
          1:23–cv–03721–SCJ
          1:23–cv–03720–SCJ

Case in other court:  Fulton County Superior Court,
        23SC188947
Cause: 28:1442 Petition for Removal – Suit against Federal
Officer

Date Filed: 08/25/2023
Date Terminated: 09/29/2023
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**The State of Georgia**       represented by **Fani T. Willis**
                     Fulton County District Attorney's Office
                     136 Pryor Street
                     Atlanta, GA 30303
                     404–612–8904
                     Email: <u>fani.willisda@fultoncountyga.gov</u>
                     *LEAD ATTORNEY*
                     *ATTORNEY TO BE NOTICED*

                     **Nathan J. Wade**
                     Fulton County District Attorney's Office
                     3rd Floor
                     136 Pryor Street, SW
                     Atlanta, GA 30303
                     770–303–0700
                     Fax: 770–303–0707
                     Email: <u>nathanwade@lawyer.com</u>
                     *LEAD ATTORNEY*
                     *ATTORNEY TO BE NOTICED*

                     **Alex Bernick**
                     Fulton County District Attorney's Office
                     136 Pryor Street SW
                     3rd Floor
                     Atlanta, GA 30303
                     404–698–5506
                     Email: <u>alex.bernick@fultoncountyga.gov</u>
                     *ATTORNEY TO BE NOTICED*

                     **Anna Green Cross**
                     Office of the Fulton County District
                     Attorney

1

Third Floor
136 Pryor Street, S.W.
Atlanta, GA 30303
404–948–3022
Email: anna@crosskincaid.com
*ATTORNEY TO BE NOTICED*

**Daysha D'Anya Young**
Fulton County
District Attorney's Office
136 Pryor Street
3rd Floor
Atlanta, GA 30303
470–637–1920
Email: daysha.young@fultoncountyga.gov
*ATTORNEY TO BE NOTICED*

**Francis McDonald Wakeford , IV**
Fulton County District Attorney's Office
3rd Floor
136 Pryor Street, SW
Atlanta, GA 30303
404–613–4670
Email: fmcdonald.wakeford@fultoncountyga.gov
*ATTORNEY TO BE NOTICED*

**John Earl Floyd**
Bondurant Mixson & Elmore, LLP
1201 West Peachtree Street, N.W.
Ste 3900
Atlanta, GA 30309–3417
404–881–4100
Email: floyd@bmelaw.com
*ATTORNEY TO BE NOTICED*

**John William Wooten**
Fulton County District Attorney's Office
136 Pryor Street SW
3rd Floor
Atlanta, GA 30303
404–612–6560
Email: will.wooten@fultoncountyga.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Cathleen Alston Latham**                 represented by   **William Grant Cromwell**
Cromwell Law, LLC
400 Galleria Park Way
Sutie 1920

Atlanta, GA 30339
678–772–8967
Fax: 404–842–9750
Email: bcromwell@cartercromwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/25/2023 | 1 | | NOTICE OF REMOVAL with CRIMINAL INDICTMENT filed by Cathleen Alston Latham. (Filing fee $402 receipt number AGANDC–12842072) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Civil Cover Sheet)(bgt) Please visit our website at http://www.gand.uscourts.gov/commonly–used–forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 08/25/2023) |
| 08/25/2023 | 2 | | NOTICE by Cathleen Alston Latham *civil cover sheet* (Cromwell, William) (Entered: 08/25/2023) |
| 08/26/2023 | 3 | | NOTICE of Appearance by John Wooten on behalf of The State of Georgia (Wooten, John) (Entered: 08/26/2023) |
| 08/29/2023 | 4 | | ORDER re 1 Notice of Removal, Evidentiary Hearing set for 9/20/2023 at 9:30 AM in ATLA Courtroom 1907 before Judge Steve C. Jones. Given the overlap in arguments and evidence, and in the interest of judicial economy, Lathams hearing will be held in conjunction with the evidentiary hearing of her co–Defendant, David James Shafer (Civil Action No. 1:23–cv–03720–SCJ). The Fulton County District Attorney's Office may submit a written response to Latham' s Notice of Removal no later than Thursday, September 7, 2023. Any response submitted must not exceed 25 pages in length. In the interim, pursuant to 28 U.S.C. § 1455(b)(3), proceedings may continue in the Superior Court of Fulton County, Georgia. Signed by Judge Steve C. Jones on 08/29/2023. (rsg) (Entered: 08/29/2023) |
| 08/30/2023 | 5 | | NOTICE of Appearance by Anna Green Cross on behalf of The State of Georgia (Cross, Anna) (Entered: 08/30/2023) |
| 09/01/2023 | 6 | | CERTIFICATE OF SERVICE filed by Cathleen Alston Latham (Cromwell, William) (Entered: 09/01/2023) |
| 09/01/2023 | 7 | | NOTICE of Appearance by John Earl Floyd on behalf of The State of Georgia (Floyd, John) (Entered: 09/01/2023) |
| 09/07/2023 | 8 | | RESPONSE re 4 Order,,,, Set Deadlines/Hearings,,, 1 Notice of Removal, filed by The State of Georgia. (Attachments: # 1 Exhibit Nov 20 Gov Cert, # 2 Exhibit Dec 7 SoS Recount Cert, # 3 Exhibit Dec 7 Gov re–Cert, # 4 Exhibit Fake Certificate, # 5 Exhibit Meadows removal tx, # 6 Exhibit 1960 Hawaii Docs)(Cross, Anna) (Entered: 09/07/2023) |
| 09/11/2023 | 9 | | ADMINSTRATIVE ORDER NO. 23–04: IN RE USE OF CELLULAR TELEPHONES AND ELECTRONIC DEVICES ON THE 19TH FLOOR OF THE RICHARD B. RUSSELL BUILDING ON SEPTEMBER 18 AND SEPTEMBER 20, 2023. Signed by Chief Judge Timothy C. Batten, Sr. on 9/11/2023. (bgt) (Entered: 09/11/2023) |

| 09/11/2023 | 10 | | ORDER GRANTING the [Doc. 9 in 1:23–CV–3792–SCJ)] Motion to Consolidate Evidentiary Hearings filed by Defendant Shawn Still. Accordingly, the September 18, 2023 (2:00 p.m.) hearing for the case sub judice is CANCELED. Given the overlap in arguments and evidence, and in the interest of judicial economy, a consolidated evidentiary hearing concerning the Notices of Removal for the following three cases will be held on SEPTEMBER 20, 2023 at 9:30 A.M. (Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, Courtroom 1907): Georgia v. David James Shafer, Civil Action No. 1:23–cv–03720; Georgia v. Shawn Micah Tresher Still, Civil Action No. 1:23–cv–03792; and Georgia v. Cathleen Alston Latham, Civil Action No. 1:23–cv–03803. Signed by Judge Steve C. Jones on 09/11/2023. (ddm) (Entered: 09/11/2023) |
|---|---|---|---|
| 09/14/2023 | 11 | | NOTICE of Appearance by Daysha D'Anya Young on behalf of The State of Georgia (Young, Daysha) (Entered: 09/14/2023) |
| 09/14/2023 | 12 | | ORDER denying 10 Motion for Authorization for Witness to Appear and Testify by Means of Video Teleconference Technology as filed in 1:23–CV–3720–SCJ. Signed by Judge Steve C. Jones on 9/14/2023.(pdw) (Entered: 09/14/2023) |
| 09/15/2023 | 13 | | NOTICE of Appearance by Alex Bernick on behalf of The State of Georgia (Bernick, Alex) (Entered: 09/15/2023) |
| 09/15/2023 | 14 | | NOTICE of Appearance by Francis McDonald Wakeford, IV on behalf of The State of Georgia (Wakeford, Francis) (Entered: 09/15/2023) |
| 09/15/2023 | 15 | | RESPONSE re 8 Response (Non–Motion), *to the State's response to notice of removal* filed by Cathleen Alston Latham. (Cromwell, William) (Entered: 09/15/2023) |
| 09/15/2023 | 16 | | ORDER ALLOWING AUDIO/VISUAL EQUIPMENT IN THE COURTROOM for counsel of record on September 20, 2023 at 9:30 a.m. Signed by Judge Steve C. Jones on 9/15/23. (rsg) (Entered: 09/15/2023) |
| 09/18/2023 | 17 | | NOTICE by Cathleen Alston Latham *Of Waiver of Right to Be Present* (Cromwell, William) (Entered: 09/18/2023) |
| 09/18/2023 | 18 | | ORDER directing that if the Defendant still wishes to waive their presence at the September 20, 2023 Coordinated Hearing, the Court ORDERS the Parties to file Declarations of Waiver that are signed by the individual defendant, not their attorneys, before 9:00 AM on SEPTEMBER 20, 2023. Signed by Judge Steve C. Jones on 09/18/2023. (ddm) (Entered: 09/18/2023) |
| 09/18/2023 | 19 | | NOTICE by Cathleen Alston Latham *of Amended Waiver* (Cromwell, William) (Entered: 09/18/2023) |
| 09/18/2023 | 20 | | NOTICE of Appearance by Nathan J. Wade on behalf of The State of Georgia. (rsg) (Entered: 09/19/2023) |
| 09/20/2023 | 21 | | Minute Entry for proceedings held before Judge Steve C. Jones: Evidentiary Hearing held on 9/20/2023. Oral argument heard regarding Defendants' respective Notices of Removal. Defendants' exhibits 1 and 2 admitted over objection. Defendants' exhibit 3 admitted without objection. Defendants' exhibits 4 and 5 were tendered; the Court will permit counsel for State of Georgia until noon on 9/21/2023 to review and advise the Court of any |

| | | | |
|---|---|---|---|
| | | | objections, after which the Court will make a determination regarding admission. (Court Reporter Dianne Peede)(rsg) (Entered: 09/20/2023) |
| 09/20/2023 | 22 | | Exhibit List by Cathleen Alston Latham. (rsg) (Entered: 09/20/2023) |
| 09/21/2023 | 23 | | TRANSCRIPT of an evidentiary hearing held on 9/20/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Diane Peede, Diane_Peede@GAND.uscourts.gov. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/12/2023. Redacted Transcript Deadline set for 10/23/2023. Release of Transcript Restriction set for 12/20/2023. (Attachments: # 1 Appendix) (dcp) (Entered: 09/21/2023) |
| 09/21/2023 | 24 | | ORDER re 22 Exhibit List filed by Cathleen Alston Latham. The State does not object to Defendant's Exhibit 4. Accordingly, Defendants Exhibit 4 is ADMITTED. The Court ADMITS Defendants Exhibit 5 over the State's objections. The Court finds that the document is admissible, and the notes need not be redacted. Signed by Judge Steve C. Jones on 9/21/23. (rsg) (Entered: 09/21/2023) |
| 09/22/2023 | 25 | | Amended (per 24 Order) Defendants' Exhibit List from 9/20/2023 evidentiary hearing 21 . (pdw) (Entered: 09/22/2023) |
| 09/29/2023 | 26 | | ORDER REMANDING the State's criminal prosecution of Cathleen Alston Latham under Section 1455 to Fulton County Superior Court. In the light of these holdings, the Court DIRECTS the Clerk of Court to CLOSE this case. The Court's conclusion is not to suggest any opinion about the State's case against Latham. The Court makes no ruling on the merits of the charges against Latham or any defense that she may offer. Latham maintains the presumption of innocence and bears no burden of proving that she did not commit the crimes charged against her. The burden of proof beyond a reasonable doubt remains with the State. This Order's sole determination is that there is no federal jurisdiction over the criminal case. The outcome of this case will be for a Fulton County judge and trier of fact to ultimately decide. Signed by Judge Steve C. Jones on 9/29/23. (rsg) (Entered: 09/29/2023) |
| 09/29/2023 | 27 | | Remand Letter to Superior Court of Fulton County. (rsg) (Entered: 09/29/2023) |
| 09/29/2023 | | | Civil Case Terminated. (rsg) (Entered: 09/29/2023) |
| 09/29/2023 | 28 | | Case electronically remanded to Superior Court of Fulton County, Georgia. (Envelope #13278493 has been submitted successfully.) (rsg) (Entered: 09/29/2023) |
| 10/06/2023 | 29 | | NOTICE OF APPEAL as to 26 Order,,, by Cathleen Alston Latham. Filing fee $ 505, receipt number AGANDC–12935354. Transcript Order Form due on 10/20/2023 (Cromwell, William) (Entered: 10/06/2023) |
| 10/06/2023 | 30 | | USCA Appeal Transmission Letter to USCA– 11th Circuit re: 29 Notice of Appeal filed by Cathleen Alston Latham. (pjm) (Entered: 10/06/2023) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **STATE OF GEORGIA** | |
| | **CIVIL ACTION FILE** |
| **v.** | |
| | **No. 1:23-CV-03803-SCJ** |
| **CATHLEEN ALSTON LATHAM,** | |
| | **RE: NOTICE OF REMOVAL OF** |
| **Defendant.** | **FULTON COUNTY SUPERIOR** |
| | **COURT INDICTMENT** |
| | **NO. 23SC188947** |

**<u>ORDER</u>**

This matter appears before the Court on Cathleen Alston Latham's Notice

of Removal. Doc. No. [1].[1,2] The State of Georgia responded in opposition of

_____

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

[2] The Court notes that Latham's Notice of Removal mentions a "writ of habeas corpus." Doc. No. [1], 6, 17. The Court notes that no analysis was given to explain or expound upon this request; thus, the Court does not deem that a petition for habeas relief was sufficiently raised. To the extent that Latham is petitioning for habeas corpus, the Court incorporates as fully set forth herein its analysis in the order remanding David J. Shafer's case to State Court and denying his petition for habeas corpus. See <u>Georgia v. David J. Shafer</u>, 1:23-cv-3720 (N.D. Ga. Sept. 29, 2023).

removal (Doc. No. [8]), and Latham replied in support of her removal (Doc. No. [15]).

In this Order, the Court primarily evaluates a relatively narrow question: whether Latham is entitled to remove her criminal prosecution under the federal officer removal statute (28 U.S.C. § 1442(a)(1)). The Court concludes that the answer is no and therefore, **DECLINES** to assume jurisdiction over the State's criminal prosecution of Latham under 28 U.S.C. § 1455 and **REMANDS** the case to the Fulton County Superior Court.[3]

## I.    BACKGROUND

Latham served as a 2020 presidential elector under Georgia law for the Republican presidential nominee—then-President Donald J. Trump. Defendant's Exhibit ("DX") 4, Doc. No. [23] (Hearing Tr.) Tr. 24:25–25:5. Following the 2020

---

[3]  As the Court has previously indicated, despite using the term "remand," the Court has not actually assumed jurisdiction over this case under Section 1455, and the State proceedings are ongoing. See Georgia v. Meadows, --- F. Supp. 3d ---, No. 1:23-CV-03621-SCJ, 2023 WL 5829131, at *1 n.3 (N.D. Ga. Sept. 8, 2023). Nevertheless, Section 1455 itself conceives of some form of remand, 28 U.S.C. § 1455(b)(4), and other federal courts who have failed to find that federal jurisdiction exists over a criminal prosecution have "remanded" the prosecution to the state court. See, e.g., New York v. Trump, ---F. Supp. 3d----, No. 23 CIV. 3773 (AKH), 2023 WL 4614689, at *1 (S.D.N.Y. July 19, 2023).

Presidential election, Georgia certified that President Biden, the Democrat presidential nominee, had won Georgia's presidential contest. Hearing Tr. 69:16–22; 100:14–16. Despite this certification, Latham, along with fifteen other Republican-nominated presidential electors,[4] met at the Georgia State Capitol to cast presidential elector ballots in favor of President Trump. Hearing Tr. 28:5–16; DX 3. They met because Georgia's election results had been challenged by President Trump and Latham's fellow Republican-nominated presidential elector, David J. Shafer, in the Georgia state courts. Hearing Tr. 28:5–16; DX 3. Ultimately, the Georgia presidential election was declared for the Democratic presidential ticket and the Democrat-nominated presidential electors' votes were counted by the Senate.

---

[4] Latham and these fifteen other individuals who met as the Republican-nominated presidential electors have been deemed "fake electors," in the media and were referred to as such by the State at the evidentiary hearing. Hearing Tr. 8:6-12; 68:18–21. Counsel urged that they be referred to as "contingent electors." Id. at 9:7–11. Neither term, however, adequately describes the Republican-nominated presidential electors under federal or Georgia law. Federal law does not contain the term "contingent elector." The Georgia law specifically relating to electors in contested contests also does not use the term "contingent elector." O.C.G.A. § 21-2-503. In fact, this Georgia provision applies to the electors in contested elections who have presumptively won, which here would have been the Democrat-nominated presidential electors. Id. For the sake of precision and clarity, therefore, the Court will use the term "Republican-nominated presidential electors" to describe Latham and the other fifteen individuals that attended the December 14, 2020 meeting.

Based on these and other election related activities, on August 14, 2023, a grand jury empaneled in the Superior Court of Fulton County, Georgia, returned a 41-count Indictment against Latham and eighteen other defendants. Doc. No. [1]. The Indictment charges Latham with eleven of the counts—which include, being a part of criminal conspiracy in violation of Georgia's Racketeer Influenced Corrupt Organization (RICO) Act (Count One); impersonating a public officer (Count Eight); forgery in the first degree (Count Ten); false statements and writing (Count Twelve), criminal attempt to commit filing false documents (Count Fourteen); two counts of conspiracy to commit election fraud (Counts Thirty-Two and Thirty-Three), conspiracy to commit computer theft (Count Thirty-Four), conspiracy to commit computer trespass (Count Thirty-Five), conspiracy to commit computer invasion of privacy (Count Thirty-Six), conspiracy to defraud the State (Count Thirty Seven). Doc. No. [1-1], 2–4.

On August 25, 2023, Latham filed her Notice of Removal of her criminal prosecution. Doc. No. [1]. She sought removal under Section 1442—the federal officer removal statute. See generally Doc. No. [1]. The Court declined to summarily remand Latham's removal action and ordered an evidentiary hearing to be held on September 20, 2023, pursuant to Section 1455(b)(5). Doc. No. [4].

4

The Court also ordered the State to respond to Latham's Notice of Removal (id.), which it did on September 5, 2023 (Doc. No. [8]). Latham replied on September 15, 2023. Doc. No. [15].

On September 20, 2023, the Court held a consolidated hearing on Latham's Notice of Removal, with her co-defendants and fellow Republican-nominated presidential electors, David J. Shafer, and Shawn Micah Tresher Still. Doc. No. [21].[5] Latham waived her right to appear at the evidentiary hearing. Doc. No. [19]. See generally Hearing Tr. Defendants did not call any live witnesses, but successfully moved to admit five exhibits and orally presented their legal argument for federal jurisdiction. Id.; Doc. No. [25]. The Court State did not submit any evidence and presented oral argument in opposition to removal. Hearing Tr. 66:6–75:14.

_____

[5] At the evidentiary hearing, Latham specifically adopted the arguments made by Shafer and Still. Hearing Tr. 36:2–4. The Notices of Removal filed by these three Republican-nominated presidential electors are distinct; however, Latham's arguments for why she constitutes a federal officer under Section 1442 generally correspond with Shafer and Still's arguments in their Notices of Removal. See Shafer's Notice of Removal (Georgia v. David J. Shafer, 1:23-cv-3720, Doc. No. [1] (N.D. Ga. Aug. 15, 2023); Still's Notices of Removal  (Georgia v. Shawn Micah Tresher Still, 1:23-cv-3792, Doc. No. [1] (N.D. Ga. Aug. 24, 2023)).

5

At the conclusion of the hearing, the Court took the matter of its jurisdiction over the criminal prosecution under advisement. Having considered the arguments put forth by the Parties, the evidence submitted at the evidentiary hearing, and the briefing on this matter, the Court now enters this Order, concluding that the Court lacks federal jurisdiction over Latham's criminal prosecution.

## II.   LEGAL STANDARD

"[A] federal district court should be slow to act 'where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.'" Cameron v. Johnson, 390 U.S. 611, 618 (1968) (quoting Douglas v. City of Jeannette, 319 U.S. 157, 162 (1943)). An exception to those general concepts of federalism is the federal officer removal statute, 28 U.S.C. § 1442(a)(1). That statute allows for federal jurisdiction over "a criminal prosecution . . . against . . . any officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office." Federal officer removal "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." Florida v. Cohen, 887 F.2d 1451, 1453 (11th Cir. 1989) (per curiam)

6

(citing <u>Willingham v. Morgan</u>, 395 U.S. 402, 405 (1969)). Given a preference for state courts conducting their state prosecutions, it has been suggested that a "more detailed showing" of the relation between the acts charged and the federal role at issue is required. <u>Willingham</u>, 395 U.S. at 409 n.4. Furthermore, federal courts must maintain a balance between what Section 1442 allows and respect for a State's right to deal with matters properly within its domain.

Latham removed this criminal prosecution under 28 U.S.C. § 1455, which provides the procedure for removing a state criminal prosecution to a federal district court. "28 U.S.C. § 1455 'merely provides procedures that must be followed in order to remove a criminal case from state court when a defendant has the right to do so under another provision.'" <u>Maine v. Counts</u>, No. 22-1841, 2023 WL 3167442, at *1 (1st Cir. Feb. 16, 2023) (quoting <u>Kruebbe v. Beevers</u>, 692 F. App'x 173, 176 (5th Cir. 2017) (per curiam)). Upon filing a notice of removal, the Court must promptly determine whether the notice and its attachments clearly fail to establish the Court's subject matter jurisdiction, and if they do, the case is summarily remanded to state court. 28 U.S.C. § 1455(b)(4). If summary remand is not granted, then the district court must "promptly" hold an evidentiary hearing to determine the "disposition of the prosecution as justice

7

shall require." Id. at § 1455(b)(5). Based on the facts adduced at the hearing and the arguments put forth by the Parties, the Court must determine whether the Defendant has met her burden in establishing that the Court has subject matter jurisdiction over her criminal prosecution. Trump, 2023 WL 4614689, at * 5 (citing United Food & Comm. Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).

Under 28 U.S.C. § 1442, the question of the scope of a federal officer's authority contains issues of law and fact. See Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992) ("[D]etermination[s] of whether an employee's actions are within the scope of [her] employment involve[ ] a question of law as well as fact.").

Ultimately, for removal under Section 1455 to be proper, the removing party must show that there is a basis for the federal court to exercise jurisdiction over the criminal prosecution. See Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."). If the Court lacks federal jurisdiction, then the case cannot proceed in this forum.

The Supreme Court has cautioned that "an airtight case on the merits in order to show the required causal connection" is not required and that courts are

8

to "credit" the movant's "theory of the case" for the elements of the jurisdictional inquiry.[6] Jefferson Cnty. v. Acker, 527 U.S. 423, 432 (1999). "The point is only that the officer should have to identify as the gravamen of the suit an act that was, if not required by, at least closely connected with, the performance of h[er] official duties." Id. at 447 (Scalia, J., dissenting).

## III.   ANALYSIS

The Court has no jurisdiction over the State's prosecution of Latham under the federal officer removal statute because Latham failed to carry her burden in establishing that she is a federal officer or that she acted under the direction of a federal officer.

### A.   Who is a Federal Officer?

Latham filed her notice of removal of this case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The federal officer

---

[6] The Court notes that this language in Acker refers to the colorable defense prong of the analysis. Acker, 527 U.S. at 432. Nevertheless, the Court will evaluate the theory of the case as it relates to the color of office because at least one district court recently has applied it in this manner. See Georgia v. Heinze, 637 F. Supp. 3d 1316, 1322 (N.D. Ga. 2022).

9

removal statute applies to "any officer . . . of the United States, or any agency thereof" or "any person acting under that officer." Id.

The questions before this Court are whether (1) Latham was a federal officer when she acted as a Republican-nominated presidential elector or (2) Latham was acting under a federal officer during the actions alleged in the Indictment. The answer to both questions is no.

### 1.    Latham as a federal officer herself

The Court ultimately concludes that Latham was not a federal officer when she acted as a Republican-nominated presidential elector because presidential electors are not federal officers. The Court first addresses the role of a presidential elector broadly and then considers the nuances of Latham's specific status as a Republican-nominated presidential elector.

### a)    Presidential electors

The Court first determines that presidential electors are not federal officers. A number of considerations, including the text of the Electors Clause, the

10

Supreme Court's prior statements, in *dicta*[7], on presidential electors, and the general purpose of the federal officer statute (in the light of presidential electors' role), all support this conclusion.

The Electors Clause provides:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. Const. art. II, § 1, cl. 2.

---

[7]   Latham, Shafer, and Still argued that these statements regarding the status of presidential electors are not dispositive of the federal officer question, in part, because they are dicta, and because they relate to the appointment of presidential electors. Hearing Tr. 40:13–14. To the extent that the pronouncements in the subsequent cases are dicta, "[federal courts] do not [ ] consider[] dicta from the Supreme Court lightly. Rather, [courts] according it appropriate deference . . . As we have frequently acknowledge, Supreme Court dicta have a weight greater than ordinary judicial dicta as prophecy of what that Court might hold; accordingly [courts] do not blandly shrug them off because they were not a holding." Schwab v. Crosby, 451 F.3d 1308, 1326 (11th Cir. 2006) (quoting United States v. Camargo, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc)). The Court sees no reason to find an exception to the Supreme Court's statement that presidential electors are not federal officers. The Court particularly finds that Green, the case upon which all the other Supreme Court cases rely, is highly relevant as it specifically states that the casting, certifying, and the transmitting of the ballots does not make presidential electors federal officers. 134 U.S. at 379. Whether the act of balloting transformed Latham into a federal officer is one of the questions before this Court. Hearing Tr. 34:19-25.

11

The Court notes that the text of the Electors Clause begins by expressly delegating the power to appoint presidential electors to the States. It goes on to qualify that this power has some constitutional limits, namely "*Person holding an Office of Trust . . . under the United States*," are excluded from serving as a presidential elector." Id. (emphasis added); see also The Federalist No. 68 (Alexander Hamilton) (explaining the purpose of the presidential electors is to safeguard against corruption and influence by the President; therefore, "they have excluded from eligibility to this trust, all those who from situation might be suspected of too great devotion to the President in office. No senator, representative, or other *person holding a place of trust or profit under the United States can be of the numbers of the electors*." (emphasis added)). The plain definition of officer is "[s]omeone who holds an office of trust, authority, or command." Officer, Black's Law Dictionary (11th ed. 2019); see also Operation Rescue Nat'l v. United States, 975 F. Supp. 92 (D. Mass. 1997) (citing Lamar v. United States, 241 U.S. 103, 113 (1916) (using dictionaries to determine whether an individual is an officer under Section 1442).

By design, therefore, presidential electors cannot be individuals who hold a place of trust or profit or authority from the United States and thus, do not meet

12

the office of trust category of being a federal officer. Additionally, the role of presidential electors is to meet in their respective states, cast their ballots, and transmit them to Congress. U.S. Const. art. II, § 1, cls. 2–3, amend. XII. There is nothing about these actions or the text of the Constitution that gives a presidential elector authority or command over any federal activities. Accordingly, including presidential electors within the category of federal officers is inconsistent with the plain meaning of the word "officer."

Furthermore, in various contexts since 1890, the Supreme Court has stated that presidential electors are not federal officers. See Fitzgerald v. Green, 134 U.S. 377, 379 (1890) ("Although the [presidential] electors are appointed and act under and pursuant to the [C]onstitution of the United States, they are no more officers or agents of the United States than are the members of the state legislatures when acting as electors of federal senators, or the people of the states when acting as electors of representatives in congress."); McPherson v. Blacker, 146 U.S. 1, 35 (1892) (same); Burroughs v. United States, 290 U.S. 534, 545 (1934) ("While presidential electors are not officers or agents of the federal government . . . they exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States.");

13

Ray v. Blair, 343 U.S. 214, 224 (1952) ( "The presidential electors exercise a federal function in balloting for President and Vice-President but they are not federal officers or agents any more than the state elector who votes for congressmen."); Oregon v. Mitchell, 400 U.S. 112, 211 n.89 (1970) (Harlan, J., dissenting) ("[P]residential electors act by authority of the States and are not federal officials."); Bush v. Gore, 531 U.S. 98, 112 (2000) (Rehnquist, CJ., concurring) ("While presidential electors are not officers or agents of the federal government . . . they exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States.").To be sure, none of these Supreme Court statements arose under the federal officer removal statute. Nevertheless, the Court finds these statements persuasive, even if not binding, authority for resolving the instant question about whether Latham and her fellow Republican-nominated presidential electors were federal officers.

Latham's argument that that the act of balloting distinguishes her case from these prior cases commenting on the appointment of presidential electors does not persuade the Court otherwise. Even though electors are engaging in a federal functions when they meet and cast their ballots, that is insufficient to make someone a federal officer. To find otherwise would convert all citizens who

14

can lawfully vote into federal officers when they cast their ballot for U.S. House of Representatives. U.S. Const. art. I, § 2, cl. 1; Green, 134 U.S. at 377. Furthermore, the Constitution does not provide for any action that the presidential electors may undertake on behalf of the United States. U.S. Const. art. II, § 1, cls. 2–3; amend. XII.

Likewise, the appeal to U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 805 (1995) is not compelling. See, e.g., Hearing Tr. 41:15–42:22. The Supreme Court in Thornton (a non-removal case expressly examining Article II, Section 2 of the Constitution), rejected Arkansas's qualifications for congressional candidates that exceeded the Constitutional requirements by emphasizing that congressmembers are paid from the federal Treasury and that "each member of Congress is an officer of the union, deriving h[er] powers and qualifications from the Constitution, and neither created by, dependent upon, nor controllable by the states." Thornton, 514 U.S. at 803.

Even assuming Thornton's test applies to the instant question, presidential electors would not be federal officers. Presidential electors, by design, are not compensated by the federal Treasury, but are paid pursuant to state law. See U.S. Const. art. II, § 1, cl. 2 ("[N]o Senator, Representative, or other Person holding

a . . . *Profit under the United States*, shall be appointed an Elector") (emphasis added); <u>see also</u> O.C.G.A. § 21-2-13 (specifying that Georgia's presidential electors are compensated from the State Treasury). Moreover, in contrast to the Constitution's express qualifications for congressmembers, [8] <u>Thornton</u> acknowledged that the States maintain vast amounts of control over the qualifications of their presidential electors. <u>Thornton</u>, 514 U.S. at 804 (quoting U.S. Const. art. II, § 1, cl. 2); <u>see also</u> The Federalist No. 51 (Alexander Hamilton)[9] ("To have submitted it to the legislative discretion of the States, would have been improper . . . for the [ ] reason that it would have rendered too dependent on the State governments that branch of the federal government which ought to be

---

[8] "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. Const. art. I, § 2, cl. 2. "No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen." U.S. Const. art. I, § 3, cl. 3.

[9] "The opinion of the *Federalist* has always been considered as of great authority. It is a complete commentary on our constitution; and is appealed to by all parties in the questions to which that instrument has given birth." <u>Cohens v. Virginia</u>, 19 U.S. 264, 418 (1821); <u>see also Thornton</u>, 514 U.S. at 806 (stating that the Federalist Papers are "available affirmative evidence indicat[ing] the Framers' intent").

16

dependent on the people alone."). Thus, <u>Thornton</u> does not support finding presidential electors are federal officers.

Finally, the purpose of federal officer removal is not served by finding presidential electors to be federal officers. The purpose of federal officer removal is to protect actions taken on behalf of the federal government from state interference. More specifically, Section 1442 is to protect federal officers from being prosecuted or sued in a State Court for "acting [within the States]" in the "scope of their [federal] authority" when their actions were "warranted by the Federal authority they possess[.]" <u>Tennessee v. Davis</u>, 100 U.S. 257, 263 (1880).

The function of presidential electors does not implicate these federalism and supremacy concerns. Neither the Electors Clause nor any other constitutional provision, suggest that the presidential electors are acting on behalf of the United States or are undertaking any action on behalf of the United States. Instead, the Supreme Court has explained, the "[Electors] Clause[] [is an] express delegation[] *of power to the States* to act with respect to federal elections." <u>Thornton</u>, 514 U.S. at 805 (emphasis added). Presidential Electors "*act by authority of the state* that in turn receives its authority from the federal constitution." <u>Ray</u>, 343 U.S. at 224–25 (emphasis added); <u>cf.</u> <u>Moore v. Harper</u>, 600 U.S. 1, 20 (2023)

17

("[I]n choosing Presidential electors, the Clause 'leaves it to the [State] legislature exclusively to define the method of effecting the object.'") (quoting <u>McPherson</u>, 146 U.S. at 27). <u>Davis</u>'s explanation of the rationale for the federal removal statute stands in stark contrast to the source of power and authority vested in presidential electors. Because the electors receive their authority from the states, finding that presidential electors are federal officers would frustrate the purpose of the federal officer removal statute.

In sum, based on the text of the Constitution, the Supreme Court's historical statements and precedents, and the purpose of the federal officer removal statute, the Court determines that presidential electors are not federal officers under Section 1442.

### b)   <u>Latham as a Republican-nominated presidential elector and contingent electors more generally</u>

Moreover, the Court's conclusion that Latham, as a Republican-nominated presidential elector, was not a federal officer is supported by the fact that at the time of her alleged actions, she was not yet (and indeed never became) a 2020 presidential elector for the State of Georgia. Even assuming that Latham was a

18

contingent presidential elector,[10] contingent presidential electors are a creation of *Georgia* state law, not federal law. See O.C.G.A. § 21-2-503(a) (statute that contemplates "contingently" elected officials). There is no federal corollary that provides for contingent presidential electors.

Latham cites a 1960 Hawaii case to show that contingent presidential electors are serving as federal officers when they convene and cast ballots. Doc. No. [1], 23. In that case, a Hawaiian trial court held that under state law, the electors for President John F. Kennedy were the duly elected presidential electors resulting from the November 1960 Presidential Election and could challenge the election results. DX 5. The Court finds that <u>Lum</u> is not particularly helpful to deciding this case because neither the findings of facts or conclusions of law, in that case, discuss the 1960 Hawaiian Democrat presidential electors' meeting, casting ballots, or transmitting ballots to Congress. DX 5. The findings of fact and conclusions of law do not address the constitutionality of undertaking these actions, or whether the Democrat presidential electors were federal officers.

---

[10] The Court does not assume that Latham was a contingent elector because, as noted above, contingent presidential electors, under Georgia law, are those presidential electors who presumptively won the election, not the electors who presumptively lost the election. O.C.G.A. § 21-5-503.

19

Accordingly, the Court finds that Latham, was not a federal officer when operating as a Republican-nominated presidential elector specifically, cannot be a federal officer.

### 2.    *Agents of Federal Officers*

Latham, alternatively, argues that she was acting under the direction of a federal officer for purposes of Section 1442 removal. Doc. No. [1], 8–10. The Court rejects this basis for federal jurisdiction because Latham has not met her burden in showing that she was acting under a federal officer. The Eleventh Circuit has propounded a three-part test for determining whether a private individual was "acting under" a federal officer. First, Latham "must show that [she] is a person within the meaning of the statute who acted under a federal officer. Caver v. Cent. Ala. Elec. Coop., 845 F.3d 1135, 1142 (11th Cir. 2017) (citing 28 U.S.C. § 1442(a)(1)). Second, [Latham] must show that [she] performed the actions for which [she] is being sued under color of federal office." Id. And third, Latham "must raise a colorable federal defense." Id.

"[A] 'private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" Id. at 1143 (quoting Watson v. Phillip Morris Cos., 551 U.S. 142, 152 (2007). "[T]he private person

20

must help federal officers fulfill a basic governmental task that the government otherwise would have had to perform." Id. (citing Watson, 551 U.S. at 153–54). When a person is "'simply *complying'* with federal law, . . . [she is] '*not'* br[ought] . . . within the scope of § 1442(a)(1)." Id. (quoting Watson, 551 U.S. at 152). "[T]he relationship between the private person and the federal officer must be one of 'subjection, guidance, or control.'" Id. (quoting Watson, 551 U.S. at 151).

In Watson, the Supreme Court held that although the private entity undertook actions pursuant to federal statutes and regulations, the entity was not "acting under" a federal officer pursuant to Section 1442(a)(1). Watson, 551 U.S. at 153. By contrast, in Caver, the Eleventh Circuit held that Central Alabama Electric Cooperative ("CAEC") was an agent under the Rural Electrification Administration ("REA") and qualified for removal under Section 1442. Caver, 845 F.3d at 1143–44. The Eleventh Circuit reasoned that Congress and the President created the REA, which "exercise[d] extensive supervision over the planning, construction and operation of" CAEC, and the regulatory scheme established the REA's "significant level of control" over CAEC. Id.

Latham argues that she was "acting under" federal officers because (1) she "was following the advice of the President's legal counsel" and (2) as a

21

Republican-nominated presidential elector, she assisted the President of the
Senate, i.e., the Vice President of the United States (U.S. Const. I, § 3, cl. 4) in
performing their duties under the Electoral Count Act ("ECA").
Doc. No. [1], 9–10. The Court considers each argument in turn and ultimately
determines that these actions do not establish that Latham was acting under a
federal officer.

**a)**      <u>**Acting under private attorneys**</u>

With respect to Latham acting under the attorneys' directions, the Court
finds that these activities were not directed by a federal officer. Latham broadly
asserts that she was "acting to assist the President" and "following the advice of
the President's legal counsel for the purpose of preserving the challenge to the
election results." Doc. No. [1], 10.

Private litigation is "unofficial conduct" outside of the ambit of the
President's exercise of executive power. See <u>Clinton v. Jones</u>, 520 U.S. 681, 701–05
(1997) (concluding that "the federal courts have the power to determine the
legality of [the President's] unofficial conduct" because "[t]he litigation of
questions that relate entirely to the unofficial conduct of the individual who
happens to be the President poses no perceptible risk of misallocation of either

22

judicial power or executive power"). Based on the evidence presented, the Court concludes that any acts taken under the guidance of these attorneys were not acts taken under federal officers.

The transcript of the Republican-nominated presidential electors' meeting also shows that the Republican-nominated presidential elector meeting related to President Trump's private interests as a candidate.[11] For example, at the start of the meeting, Shafer stated:

> The President has filed a contest to the certified returns. That contest – is pending. It's not been decided or even heard by any judge with authority to hear it. And so *in order to preserve his rights*, it's important that the Republican nominees for Presidential Elector meet here today and cast their votes.

DX. 3, Tr. 3:7–13 (emphasis added). Later in this meeting, Shafer introduced "a lawyer for President Trump." Id. at 7:15. This lawyer later explained that the

---

[11] The Court notes that in its orders remanding Shafer's and Still's cases, it discussed an email between Shafer and the private attorneys. This email, while referenced in the hearing (Hearing Tr. 54:15–55:9), was not admitted as an exhibit at the hearing and was not attached to Latham's Notice of Removal in this case (Doc. No. [1]). Thus, the email is not part of the Record in Latham's case and the Court does not consider it when resolving Latham's case.

23

meeting was occurring because "the contest of the election in Georgia is ongoing." Id. at 7:17–20.

In order for Latham to be acting under the authority of a federal officer, the actions "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Caver, 845 F.3d at 1143 (quoting Watson, 551 U.S. at 147). Because the President's private litigation is "unofficial conduct," however, the Court finds that any directives from the attorneys in this private litigation to engage in activities that would benefit the litigation are not related to any federal officer duties of the President.[12]

---

[12] Furthermore, Latham was instructed to attend the meeting *by Shafer*, who was allegedly instructed *by the private attorneys* for President Trump, and they were presumptively directed *by President Trump* that a meeting needed to be held. See generally DX 3. Thus, in order for the Court to find that Latham was "acting under" the President, it would have to find that (1) Shafer was acting under President Trump's private attorneys, (2) the attorneys were themselves acting under the President and (3) both the attorneys and Shafer had the authority to delegate tasks to the Republican-nominated presidential electors. Additionally, as a matter of law, the Court would have to find that the federal officer removal statute applies when the actions were taken pursuant to directions from *two* levels of intermediaries between the defendant and the federal officer. Because the meeting transcript reflects that  these activities were unofficial conduct taken to advance President Trump's and the Trump campaign's bid for reelection the Court declines to determine whether the federal officer removal statute's reach is so long.

24

**b)** <u>**Acting under the President of the Senate of the United States**</u>

Latham also argued that, as a Republican-nominated presidential elector, she acted to assist the President of the Senate of the United States. Doc. No. [1], 9–10. The ECA[13] provides the timing requirements for states to submit their electoral ballots to Congress and the United States Archivist. 3 U.S.C. §§ 7, 11, 12 (2021). It also outlines the duties of the United States Archivist and the President of the Senate for receiving and counting the Electoral votes. 3 U.S.C. §§ 6, 15 (2021). Specifically, the Act provides that the Electors shall meet on the first Monday following the second Wednesday in November. 3 U.S.C. § 7 (2021). In this case, the meeting was to be held on December 14, 2020 at the Georgia State Capitol. Id.; O.C.G.A. § 21-2-11. Moreover, the Governor, as soon as practicable after the final ascertainment of the appointed electors, must issue a certificate of ascertainment of appointment of electors, which lists the names of the electors, and transmit the certificates to the United States Archivist and six certificates to each elector. 3 U.S.C. § 6 (2021). Under Georgia law, the presidential electors are

---

[13]  The ECA was amended by Congress in 2022. For purposes of this litigation, the Court will evaluate the Act as it existed prior to January 6, 2021, which was in effect during the time of the activities alleged in the Indictment.

25

elected by popular vote during the November election. O.C.G.A. § 21-2-10.  If the State has made its final determination of any controversy over the election six days before the elector meeting, then those electors are conclusively the electors for the state. 3 U.S.C. § 5 (2021) (the "safe harbor provision"). In this case, the safe harbor deadline was December 8, 2020.

At the meeting of the presidential electors, the electors each sign six certificates of their votes and attach these certificates to their certificates of ascertainment of appointment of electors. 3 U.S.C. § 9 (2021). The presidential electors then transmit their certificates of votes to the President of the Senate, the chief election officer of the State, the Archivist of the United States, and the judge of the district in which the electors have been assembled. 3 U.S.C. § 11 (2021). In Georgia, the certificates would go to the Georgia Secretary of State, the Chief Judge for the Northern District of Georgia, the Archivist of the United States, and the President of the Senate. If the certificates do not reach the President of the Senate or the Archivist by the fourth Wednesday in December, the President of the Senate contacts the Georgia Secretary of State and the Chief Judge for the Northern District of Georgia to transmit the ballots to the U.S. Capitol. 3 U.S.C. §§ 12, 13 (2021).

26

With these aforementioned procedures in mind, it is unclear how the Republican-nominated presidential electors' relationship with these federal officers was one of "subjection, guidance, or control." <u>Caver</u>, 845 F.3d at 1143 (quoting <u>Watson</u>, 551 U.S. at 151). Certainly, the presidential electors have a duty to meet and submit their certificates to the President of the Senate. But there is no evidence that the President of the Senate directed the Republican-nominated presidential electors to undertake any activity. In fact, under the federal legislative scheme, if the certificate of votes is not received by the President of the Senate or the Archivist of the United States by a particular date, the statute directs the Georgia Secretary of State and the Chief Judge for the Northern District of Georgia to take action—that is, transmitting copies of the certificates to the U.S. Capitol. 3 U.S.C. §§ 12, 13 (2021). At best, the presidential elector's role is to *comply* with the statutory requirements of the ECA, which is not sufficient to meet the "acting under" requirement. <u>Caver</u>, 845 F.3d at 1143 ("When a person [is] 'simply *complying*' with federal law," they are "'not' br[ought] . . . within the scope of § 1442(a)(1).'" (quoting <u>Watson</u>, 551 U.S. at 152)).

Accordingly, the Court finds that the meeting of the Republican-nominated presidential electors, as contended in this case, is not under the

27

direction of the President of the Senate, but rather constitutes mere compliance with federal statutes. Mere compliance is insufficient to show a non-governmental actor was "acting under" a federal officer for purposes of Section 1442 removal. Accordingly, the Court finds that Latham was not "acting under" the President of the Senate.

*   *   *   *

In sum, the Court finds that Latham failed to adduce sufficient evidence to show that she was a federal officer or that she was acting under the direction of a federal officer. Accordingly, the Court finds that it lacks subject matter jurisdiction over Latham's criminal prosecution under Section 1442.

### B.    Scope of Office and Colorable Defenses

The Court declines to rule on Latham's arguments related to the scope of office and her enumerated colorable federal defenses. In order for the Court to exercise subject matter jurisdiction under the federal officer removal statute, Latham must carry her burden as to all three requirements of Section 1442—(1) she was a federal officer, (2) acting under the color of her office, and (3) with a colorable federal defense. Caver, 845 F.3d at 1142. Failure to satisfy any of these requirements is fatal to removal.

28

Latham failed to meet her burden as to the first precondition; therefore, the Court finds that it cannot exercise subject matter jurisdiction over her prosecution. With the evidence currently before the Court, it cannot undertake the "relates to the color of the office" inquiry. Latham had the burden of establishing her federal office. Because the Court ruled that Latham was not a federal officer and was not acting under a federal officer, the Court cannot determine what federal office, if any, that her actions were taken under.

Additionally, judicial restraint instructs this Court to decline to rule on whether Latham has a colorable federal defense under the ECA. Latham may raise these arguments in the State court; thus, the Court declines to rule on them. In short, Latham's notice of removal must be remanded for lack of jurisdiction under Section 1442.

## IV.   CONCLUSION

For the foregoing reasons, the Court **REMANDS** the State's criminal prosecution of Cathleen Alston Latham under Section 1455 to Fulton County Superior Court. In the light of these holdings, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

The Court's conclusion is not to suggest any opinion about the State's case against Latham. The Court makes no ruling on the merits of the charges against Latham or any defense that she may offer. Latham maintains the presumption of innocence and bears no burden of proving that she did not commit the crimes charged against her. The burden of proof beyond a reasonable doubt remains with the State. This Order's sole determination is that there is no federal jurisdiction over the criminal case. The outcome of this case will be for a Fulton County judge and trier of fact to ultimately decide.

IT IS SO ORDERED this _29th_ day of September, 2023.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

30

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **STATE OF GEORGIA** | **Case Number:** |
| **v.** | **1:23-cv-03803-SCJ** |
| **CATHLEEN LATHAM,** | |
| **Defendant.** | |

## NOTICE OF APPEAL

Notice is hereby given that Defendant Cathleen Latham appeals to the U.S. Court of Appeals for the Eleventh Circuit from the Order, Dkt. No. 26, issued by Judge Steve C. Jones on September 29, 2023.

Respectfully submitted, this 6th day of October, 2023.

*/s/William Grant Cromwell*
William Grant Cromwell
State Bar of Georgia # 197240
CARTER CROMWELL LAW GROUP
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Phone: (706) 438-4225
Email: bcromwell@cartercromwell.com

Counsel for Defendant Cathleen Latham

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **STATE OF GEORGIA** | **Case Number:** |
| **v.** | **1:23-cv-03803-SCJ** |
| **CATHLEEN LATHAM,** | |
| **Defendant.** | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date set forth below, a true and accurate copy of the foregoing Notice of Appeal was filed electronically with the U.S. District Court for the Northern District of Georgia through the Court's ECF system, which will send notice of this filing to all counsel of record.

This the 6th day of October, 2023.

*/s/William Grant Cromwell*
William Grant Cromwell
State Bar of Georgia # 197240
CARTER CROMWELL LAW GROUP
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Phone: (706) 438-4225
Email: bcromwell@cartercromwell.com

2